REGAN, Judge.
Plaintiff, Warren A. Doll, instituted this suit against defendant, R. P. Farnsworth & Company, endeavoring to recover the sum of $200 for the use and occupancy by defendant, without plaintiff’s consent, of an unimproved lot of ground from January 1, 1950 to September 1, 1950.
Defendant answered and denied that it had -used the property without the permission of the plaintiff; that it had contracted with the City of New Orleans for the construction of the N. Galvez Street overpass; that the property owned by the plaintiff either had ¡been purchased or was to toe purchased by the City and, therefore, the defendant, on April 17, 1950, pursuant to its contract, entered the property and commenced the installation of various utilities in connection with the project. Defendant further answered that the city agreed to hold defendant harmless from any claims arising out of the use of the property; and, in consequence thereof, defendant called the City of New Orleans in warranty so that, in the event a judgment was rendered in favor of plaintiff, that defendant would be protected by a judgment against the City on its call in warranty.
The City answered the call in warranty and substantially admitted the pertinent allegations of defendant’s answer and also emphatically denied that either defendant or the City had used the property without the express permission and consent of the plaintiff herein.
The court, a qua, rendered judgment in favor of plaintiff and against the defendant, R. P. Farnsworth & Company on the main demand in the sum of $111.20 with legal interest from September 1, 1950, and in favor of the City of New Orleans and against the defendant, R. P. Farnsworth & Company dismissing the call in warranty. The judgment 'further reserved “the right of plaintiff * * * to claim and collect the value of the occupancy of the property” after September 1, 1950, which was the date of the filing of the present suit. Defendant has appealed only from that part of the judgment in favor of the plaintiff, Warren A. Doll.
The record reveals that plaintiff is the owner of lot “X” in the Third District in the City of New Orleans in Square 1073, bounded by N. Galvez, Feliciana, N. Miro *605 and Montegut Streets and measures 29' front on Feliciana by a depth and front of 120' on N. Galvez Street, and that he acquired the same ¡by purchase from the State of Louisiana as evidenced by State Patent No. 15,406; that defendant, in conformity with the terms of its contract with the City relating to the construction of the N. Galvez Street overpass, entered u-pon and used the property from April 17, 1950, to the date of filing of this suit, September 1, 1950, with the knowledge that the acquisition of the property by the City from the plaintiff was pending.
On or about April 21, 1950, defendant was advised by plaintiff’s attorney that the City had not consummated its purchase of the property from plaintiff or of two other properties also owned 'by plaintiff, on which the defendant was laying a sewerage line and performing other work incidental thereto and, therefore, plaintiff desired defendant to cease its work and to remove itself from the properties until the City of New Orleans had purchased them. More briefly, plaintiff threatened to enjoin defendant in the use of the property if defendant did not desist therefrom. Thereafter defendant notified its attorney of this impending situation and a conference was arranged on or about April 21, 1950 in the offices of the Lawyers Title Insurance Corporation, which was attended and participated in by Delavaile Theard, plaintiff’s attorney, Charles Cabibi, the City Attorney, Breard Snellings, defendant’s attorney, Herman Mithoff and Lloyd Adams, representing the Lawyers Title Insurance Corporation. In this conference plaintiff’s title to the property was discussed and it was agreed by Theard, on behalf of plaintiff, that he would comply with the requirements of the Lawyers Title Insurance Corporation for clearing title to the properties and that, in the usual course of events, the City would purchase them in accordance with an existing agreement between the plaintiff and the City without the necessity of the City having to resort to expropriation proceedings.
The conference was obviously motivated for the purpose of permitting defendant to continue, without interruption, its immediate operations on the property, therefore, it was further agreed between Theard, plaintiff’s attorney, and Snellings, defendant’s attorney, that plaintiff grant defendant permission to continue its operations on all of plaintiff’s properties, including the lot which is the subject of this suit, without fear of further claim being made upon it or the City until such time as title to the properties was actually vested in the City. Defendant thereupon resumed its operations upon the property. No demand other than the one hereinabove enumerated was ever made upon defendant to terminate its operations thereon prior to the filing of this suit for the value of the “use and occupancy” thereof.
Theard, in substance, denies that he entered into any agreement with defendant or the City of New Orleans relative to either waiving or abandoning his client’s claim for occupancy and that he, on behalf of his client, merely agreed not to file a suit requesting the issuance of an injunction.
There is a stipulation in the record to the effect that the plaintiff’s attorney conceded that the occupancy of the property began April 17, 1950 and not January 1, 1950 as. stated in plaintiff’s petition.
The only question posed for our consideration is one of fact and that is whether or not Theard, on behalf of his client, granted defendant and the City of New Orleans permission to continue operations on the property without fear of any claim, irrespective of its nature, 'being made upon them until such time as title to the property could be acquired by the City.
A careful examination of the record discloses that we must resolve the answer to this question of fact in favor of defendant.
The record reflects that the conference of April 21, 1950, resulted in consequence of a threat by plaintiff that suit would be instituted requesting the issuance of an injunction if defendant did not desist in its use and occupancy of the premises. In that conference, we reiterate there appeared Delvaille H. Theard representing the plaintiff, Breard Snellings representing the de *606 fendant, Charles Cabibi, Assistant City Attorney, Herman Mithoff, Chief Examiner of the Lawyers Title Insurance Corporation and Lloyd Adams, its assistant secretary.
Plaintiff testified that the value of the property is $2,500, which is the sum the City agreed to pay for the acquisition of the property and that a fair and reasonable rental price per month is the sum of $25; that he authorized Theard to appear at this conference on his behalf and to enter into any discussion which might arise with reference to title or to an injunction against the defendant (In oral argument before this Court Theard stated that he possessed unlimited authority to act on 'behalf of his client during this conference. His client was present in this court when this statement was made.) ; that after the conference work was resumed by defendant on his property and “it was understood that the City would buy "the property in ten or fifteen days”; that “if it was used then for a month or a month and a half, it would be alright but not -for them to use it for the rest of their lives.”
Charles E. Cassagne, Jr., Administrative Engineer for the New Orleans Terminal Board, testified that the plaintiff had agreed to sell the property to the City on November 22, 1949, and that this agreement was accepted by the New Orleans Terminal Board for the City and this action was subsequently ratified by the Commission Council for the City of New Orleans; that on April 20, 1950, Cassagne discussed the use of this property with Theard in his office ■at the City Hall and, at that time, it was suggested that a further conference be arranged with all interested parties present which would facilitate a positive disposition of the problem raised by plaintiff.
Breard Snellings, attorney for R. P. Farnsworth & Company, testified that on April 21, 1950, after the conference was terminated: “I asked Mr. Theard direct; I said: ‘Is it all right for R. P. Farns-worth & Company to go out and continue their work on these three (3) lots?’ He said, ‘yes, it’s perfectly all right, go ahead, we don’t want to hold up the work, go ahead and do whatever you have to do on these lots until the title has been passed.’ I said, ‘Mr. Theard, we were guilty of a technical trespass the last few days, will any claim be made for that’ and he said ‘no’. I then turned to Mr. Adams and I said: ‘You heard what Mr. Theard said, that’s all I’m interested in’ and I left and Mr. Theard left with me and the meeting was over. I then went back to the office and put that in a memorandum for my file and then the next thing I knew was when R. P. Farnsworth & Company was sued for trespass.”
He further testified:
“Q. Did Mr. Theard, in the course of the discussions had with you, at any time express, imply or indicate to you that demand would be made by Mr. Doll for payment of the value of any occupancy or any work done by R. P. Farnsworth & Company on the property owned by Mr. Doll? A. No, Sir. He specifically stated that no claim would be made for R. P. Farnsworth & Company’s prior trespass and he gave his expressed permission to continue on with our work and as far as I know he never revoked that permission. He said that no claim would be made for the past technical trespass, which was four or five days at that time, and he said we had permission to continue the work until the title to the property was passed to the City of New Orleans.
“Q. Did Mr. Theard or Mr. Doll ever make any objection to you with relation to Farnsworth using this property after this conference and prior to the filing of this suit? A. No, Sir.”
Snellings also testified that Theard told him “ ‘you have my permission to go on with the work’ and I went back and phoned Farnsworth and I said to go ahead. That’s the last I heard of it until you (Theard) filed suit.” He 'further testified that the word “rent” was not mentioned at the conference.
Charles E. Cabibi, Assistant City Attorney, testified that he actively participated in the conference on April 21, 1950, and that the greatest portion of the discussion was devoted to the Lawyers Title Insurance Corporation’s requirements that *607 plaintiff would have to fulfill before the property was conveyed to the City and that “Mr. Snellings, after discussion of the title question, 'brought out to the members of the conference that he was interested only in the liability of R. P. Farnsworth & Company for the time they had already occupied the lots owned by Mr. Warren A. Doll and whether or not they could continue with their operations without fear of being obligated to pay anything to Mr. Doll for that occupancy.” He further testified that during the course of the discussion “Theard did not indicate, express or imply that he would require compensation from Farns-worth or the City for the property, past, present or future”. He testified that Theard “stated specifically that he would-n’t hold the City of Farnsworth for any sum for the time they used the property nor for the future use or occupancy of the premises.”
Lloyd Adams, Assistant Secretary of the Lawyers Title Insurance Corporation, testified that he also participated in the conference which occurred in his office on April 21, 1950, and that there was not, to his knowledge or recollection, "any reference made to the payment of rent.”
Delvail'le H. Theard, attorney for plaintiff, Doll, testified that “the main question discussed, and I’m not going into it, at that conference, was the question of title” and that “as a result of that conference, we told them we wouldn’t issue an injunction and that they could go on. We waived no other claim at any time, actual or implied, and they have been on the property ever since and they are still on it.” Fie further testified:
“Q. Did you, Mr. Theard, ever express a formal objection to R. P. Farnsworth & Company subsequent to this conference that was had prior to the filing of the suit as to the work being done and the occupancy of that property? A. No Sir, because the result of that conference was that they would go on with their occupancy and we wouldn’t file any injunction suit or make criminal charges against them or anything 'like that. ■
“Q. Did you, prior to the filing of this suit, make demand on R. P. Farnsworth & Company to pay rent or anything for the value of that occupancy? A. No Sir, I made no amicable demand because I figured they would refer it to the City and I gave up long ago ever getting anything out of the City amicably.”
Theard further testified that “nothing was said about the value of occupancy. I won’t say rent because that would imply a lease, but there was nothing said about that.” When the Assistant City Attorney asked Theard the following question: “Q. * * * is it not a fact that I agreed for the City of New Orleans not to bring any expropriation suit in view of the fact that R. P. Farnsworth & Company was agreed or allowed occupancy of the place and you would clear up the question brought up by the Lawyers Title Insurance Corporation ? A. That was not the agreement. You are mistaken. That couldn’t be the agreement because we had an agreement to sell the property. Until you brought up the expropriation suit the other day, it never suggested itself to me as a lawyer that an expropriation suit would be brought and I couldn’t have made such an agreement.”
However, it is interesting to observe that Lloyd Adams was again called to the witness stand in rebuttal and he testified as follows: “Q. Was there any agreement about withholding expropriation proceedings pending clearance of the title herein involved? A. My understanding is there were two agreements. One was to secure a ‘Shelton Title’ and the other was for the City to expropriate. In the interest of continuing on with the work it was decided that the ‘Shelton Title’ would be secured by Mr. Doll rather than the City expropriate. That was my understanding.”
This suit was filed September 1, 1950' and the City filed a suit to expropriate the property on September 20, 1950.
In our opinion, the sum total of all the testimony adduced in the trial court, confirms plaintiff’s obvious intention to grant both defendant and the City of New Orleans unqualified permission to continue their operations on the property, which is. the subject matter of this 'litigation without fear of any claim, irrespective of its nature,, *608 being made upon them until such time as the title requirements requested toy the Lawyers Title Insurance Corporation were fulfilled by plaintiff and the property subsequently acquired by the City of New Orleans for use in connection with and incidental to the construction of the N. Galvez Street overpass.
It further appears that all interested parties relied on the obvious intentions manifested by the unqualified words used ¡by plaintiff’s counsel during this conference and the testimony only confirms and substantiates that they interpreted his intentions and acted thereon as prudent professional men would have done under similar circumstances.
It is significant to observe in this instance that words are intermediary between thought and things. We express ourselves not merely through words, which are only signs, ¡but through what they signify— through things. Words, per se, are usually colorless and sometimes meaningless; but the thing that a word stands for has a meaning of its own and usually a meaning charged with associations of ideas and most often this associative meaning is the primary and important one in its use. So it was in this case.
Defendant did not appeal from that part of the ' judgment dismissing its call in warranty, therefore, we need not consider this question.
For the reasons assigned the judgment appealed from is annulled, avoided and reversed insofar as the main demand is concerned, and it is now ordered that there be judgment 'herein in favor of defendant dismissing plaintiff’s suit at his" cost. In all other respects the judgment appealed from is affirmed.
Reversed in part; affirmed in part.
JANVIER, J., absent, takes no part.
McBRIDE, J., concurs with written reasons.