McBRIDE, Judge.
The City of New Orleans, defendant, has appealed from the judgment in this petitory action in which plaintiff claims ownership of a tract of four acres of land (fully described in the petition and judgment), which forms part of the Moisant International Airport at Kenner, Parish of Jefferson, which is owned and operated by the City of New Orleans. Neither the pleadings nor the proof affirmatively shows that the value of the land in controversy exceeds $2,000, and therefore this court has jurisdiction of the appeal. Castleberry v. Ethridge, 223 La. 466, 65 So.2d 138, and cases there cited.
Both the plaintiff and the City of New Orleans claim to be the record owners, by rival chains of title, of the property in question, but it is conceded by the City Attorney that plaintiff has the more ancient and superior record title which runs back to a sheriff’s sale made in the year 1866. *468 The City of New Orleans traces its title to the Kenner Project, a corporation which purportedly owned the property in 1910. There is no question that when the City made entry upon the property in 1941 its officials honestly believed that it had a good title thereto by virtue of a deed from Liberty Homestead in' Liquidation, dated October 30, 1941.
The City of New Orleans interposed several exceptions and pleas which are no longer material and need not be discussed in view of the defenses raised by the answer and also in view of our conclusions in the matter.
Defendant relies heavily’ on the plea of prescription of ten years established by LSA-C.C. art. 3478, and let it be said here that the City unquestionably acquired the Pailet Tract (which embraces the four acres to which plaintiff lays claim) in good faith and by a just title. The Pailet Tract in turn forms. part of a larger tract which was formerly known as Kenner Project. However, the City of New Orleans has not produced sufficient proof to serve as a foundation for the plea of ten years’ acquisitive prescription in that the City had been in corporeal possession for a period of less than ten years up to the date of the instant suit, November 21, 1949, and it has not been adequately shown that any of the City’s ancestors in title had actual possession for a sufficient period, which added to the City’s possession would aggregate a continuous period of tén years. See' LSA-C.C. art. 3493.
The City Attorney argues that the corporation Kenner Project, to which the City traces its title, went into public and unequivocal possession as required by the Civil Code for the prescription of ten years acquirendi causa by virtue of having dug certain drainage canals along the boundaries and laterally across the large tract. True, a map of Kenner Project, dated November 21, 1914, notes certain canals, but we find no evidence in the record showing the actual location of the canals. The City’s witness, Morgan, made mention of the Duncan and Butler canals, but he did not know where they were located with reference to Kenner Project. Neither is it shown by whom the canals were dug. It could be that they were not the work of Kenner Project at all, but had been constructed and maintained for public drainage purposes by some governmental authority. It is also asserted that Kenner Project had some shallow oil wells drilled on its property, but again there is no evidence to that effect. The only reference to oil wells appears in a recital contained in the act of sale by Kenner Project to American Securities Corporation on February 13, 1919, wherein it is stated that a few shallow wells had been drilled on Kenner Project “but that the same did not prove successful.” Certainly this is of no probative value.
It is also contended that the American Securities Corporation, which acquired Ken-ner Project on February 13, 1919, and owned the land until its sale to Dusenbury on December ‘4, 1924, went into actual physical possession of the tract by virtue of having had the land cleared. That the land was cleared is not shown for Morgan, the City’s witness, who it is claimed performed the work, would not say whether it was the property of American Securities Corporation which he cleared.
Dusenbury sold what later came to be known as the Pailet Tract to Lester Pailet on December 4, 1924. This vendee deeded the land to Liberty Homestead on August 29, 1929, and it was deeded back by the homestead on the same day to Pailet. On January 3, 1933, Lester Pailet sold the tract to Pailet Realty Company, a corporation, and this -vendee deeded the property back to Pailet on June 3, 1936. Liberty Homestead in Liquidation, the immediate author in title of the City of New Orleans, acquired the land from Lester Pailet on November 24, 1937.
Defendant produced two witnesses, namely, Alongi and Wool, who gave testimony with reference to their possession of the Pailet Tract on behalf of the owner during the Pailet ownership. Alongi says he lived in a house on what he thought was Pailet’s land from 1931 to 1935; that he fenced in and used the portion of the tract for agri *469 cultural purposes during that period; that he rented out to other persons portions of the land for “Mr. Pailet’s” account. Alongi also stated that he cut logs from the properly in 1933.
This testimony fails to impress us as Alongi could not say that the house was on Pailet’s land, nor could he testify that his negotiations with reference to his going upon the land were had with an owner of the property. Alongi stated that he dealt with “Old Man” Pailet, who was Lester’s father, and it is to be noted no other Pailet except Lester ever owned the land. Significant also is Alongi’s statement that he quit the land in 1934 “when Mr. Pailet died.” Title to the property during that year was registered in the name of Pailet Realty Company, and subsequently Lester Pailet and later the Liberty Homestead in Liquidation had title to the property. Even if Alongi’s testimony is to be accepted as showing a physical possession on his part, such could avail the City nothing because Alongi left the property in 1934. In the tacking of possession continuity is required. LSA-C.C. art. 3495 provides:
“But to enjoy this advantage, the different possessions must have succeeded each other without interval or interruption.”
Wool told of a rather vague conversation had with both “Old Man” Pailet and Lester Pailet some time in 1929 or 1930. It is pertinent to mention that from 1929 until the City acquired title in 1941 the Pailet Tract changed hands six times. Wool’s testimony does not show that he ever dealt with the record owner of the property or with an agent of the owner. Not alone that, but the evidence does not make out a case of possession in that Wool cannot be said to have ever physically occupied any portion of the land. His meager activities, assuming they were conducted on the Pailet tract and with the owner’s consent, did not amount to corporeal possession. The only connection Wool had with the land was his claim that at certain times of the year he would enter not only the Pailet property but also the property of other persons and throw seeds beneath trees which he said would germinate and produce vegetables which he would sell at a market.
We think that the plea of ten years’ acquisitive prescription is unavailing to defendant.
The most serious defense raised by the answer is if the City has appropriated any of plaintiff’s property that she has acquiesced both in its taking and its use for public purposes, which facts create an estoppel against her claiming title to the land and she is relegated solely to an action sounding in damages.
The intention of the City of New Orleans to erect the Moisant International Airport in the Parish of Jefferson was given extensive publicity and the contemplated airport was doubtless a matter of common knowledge. We believe'that plaintiff, along with every one else, well knew from the beginning that the airport would be constructed and where it would be located. We do not doubt in the least that plaintiff knew that her four acres would be and were taken in connection with the construction of the airport. The record shows that in October, 1946, plaintiff’s then attorney was notified by a firm of engineers from whom the attorney sought the information that plaintiff’s property had been taken by the City and was a part of the airport. Yet, plaintiff saw fit to do nothing until this suit was filed in November, 1949. The evidence shows, and it is also a well-known fact, that the City of New Orleans has spent millions of dollars in erecting the airport improvements and constructing the flying field. A sketch in the record shows that the all-important east-west runway crosses plaintiff’s strip of land. And we are convinced that insofar as the use of the four acres which plaintiff claims is concerned that the City officials acted in utmost good faith believing that the City owned the land by virtue of the deed from Liberty Homestead in Liquidation, the validity and legality of which the municipal authorities had no earthly reason to question.
*470 It would be most inequitable at this late date to hold that plaintiff’s right of re-entry to the property should be recognized.
Whether public works may be destroyed in an action such as this by a plaintiff situated such as is plaintiff and under the circumstances present in the case has for a long number of years been a subject of adjudication by our courts.
In St. Julien v. Morgan’s Louisiana & Texas Railroad Company, 35 La.Ann. 924, decided in the year 1883, the Supreme Court had this to say:
“ * * * Certain it is he did not invoke the arm of the law at the time when it could have been of service to him, but on the contrary acquiesced in the defendant’s taking possession and using his property, encouraged it to prosecute its work by abstaining from any attempt to prevent it, and made no complaint in a court of law of the injuries inflicted upon him until the defendant had expended large sums of money in completing its line. Having thus permitted the use and occupancy of his land and the construction of a quasi public work thereon without resistance or even complaint, he cannot afterwards require its demolition, nor prevent its use, nor treat the Company erecting it as his tenant. He is not debarred from an action for damages by reason of the taking of the land and for its value, but having acquiesced in the entry and encouraged if he did not invite it, he cannot afterwards affect to treat it as tortious. Considerations of public policy, not less than the suggestions of natural justice, require that in such case the owner shall not be permitted to reclaim his property free from the servitude he has permitted to be imposed upon it, but shall be restricted to his right of compensation. Goodin v. Cincinnati [& W. Canal Co.], 18 Ohio [St.] 169.”
This doctrine has been rigidly adhered to in many cases decided by our appellate courts, a few of which are: Jefferson & Lake Pontchartrain Railroad Co. v. City of New Orleans, 31 La.Ann. 478; Webster Sand, Gravel & Construction Co. v. Vicksburg, S. & P. Ry. Co., 129 La. 1096, 57 So. 529; Roussel v. New Orleans Ry. & Light Co., 152 La. 517, 93 So. 758; Gumbel v. New Orleans Terminal Co., 186 La. 882, 173 So. 518; Gumbel v. New Orleans Terminal Co., 197 La. 439, 1 So.2d 686; Adams v. Town of Ruston, 9 La.App. 603, 121 So. 768; Doll v. Sewerage & Water Board of New Orleans, La.App., 43 So.2d 271; Tate v. Town of Ville Platte, La.App., 44 So.2d 360; Doll v. R. P. Farnsworth & Co., Inc., La.App., 55 So.2d 604; Maxfield v. Gulf States Utilities Co., La.App., 65 So.2d 615.
See also 18 Am.Jur. p. 1038; 30 C.J.S., Eminent Domain, § 412, p. 137.
Both the Constitution and the statute law of this State recognize that private property shall not be taken except for public purposes and after just and adequate compensation is paid, but it is seen that courts have clearly recognized one’s right to waive the payment of such compensation in advance of the taking of the property without impairing the public use to which the property has been put.
Counsel for plaintiff concede this to be so, but they attempt to differentiate this case from those cited. Their argument is that the doctrine may be invoked only by a public or quasi-public body which possesses the power to expropriate the particular property which has been taken from the owner. The argument then follows that the City of New Orleans had not the capacity to expropriate plaintiff’s four acres from which resulted the inability to legally appropriate it, thus marking the taking of the property tortious. The foundation of the argument is that the City of New Orleans had not the right to expropriate plaintiff’s property because it failed to obtain the consent of the Police Jury of Jefferson Parish to do so.
Believing that the City of New Orleans, possessed the power of eminent domain with respect to plaintiff’s or any other land necessary to be taken in connection with the airport, we cannot adopt counsel’s rea- *471 soiling that the entry upon plaintiff’s property by the City was tortious.
The general rule is that the powers of a municipal corporation cease at its boundaries and such corporation cannot purchase or hold property beyond its territorial limits unless the power to do so has been expressly conferred upon it by the Legislature. See 62 C.J.S., Municipal Corporations, § 141, p. 283; 63 C.J.S., Municipal Corporations, § 932, p. 502; 29 C.J.S., Eminent Domain, § 23, note 2(1), p. 809,^ second column. Our research fails to reveal that prior to 1936 the City had the right to acquire, maintain, and operate airports exterritorially, but by Act 222 of that year, Section 1, (now LSA-R.S. 2:131), cities and other political subdivisions, separately or jointly, are authorized, inter alia, to construct and maintain airports and landing fields for the use of aircraft either within or without the geographical limits of such cities or subdivisions. The only qualification, and one that did not affect a municipality, was that no parish shall exercise such authority outside of its geographical limits except in an adjoining parish and then only jointly with such adjoining parish. Section 3 of the Act (now LSA-R.S. 2:133) authorized the acquisition of the necessary property by agreement with the owners, otherwise by expropriation.
In 1938 the Legislature saw fit to enact Act 419, Section 1 of which (now LSA-R.S. 33:4621) reads as follows:
“Be it enacted by the Legislature of Louisiana, That in addition to the powers now possessed by them, all municipalities and parishes within the State of Louisiana are hereby authorized and empowered to expropriate and otherwise acquire any private property, within or without their limits, for any of the purposes for which they are organized, and for any works that they are authorized to own and/or operate, or which they are authorized to lease and/or donate to the United States of America; provided that this Act shall not be construed to confer authority upon a parish or municipality to expropriate property in any other parish without the consent of the Police Jury of the parish in which the property is situated.” (Italics ours.)
It is true as counsel for plaintiff say that at no time did the Police Jury consent specifically to an expropriation of the four acres, but we cannot refrain from observing that if an attempt had been made by the municipal authorities to secure such consent the attempt would have been most ludicrous in view of the fact the City believed itself to be the owner of the land by virtue of the deed from Liberty Homestead in Liquidation in 1941. The Police Jury of Jefferson Parish also evidently believed that the City of New Orleans had title to the four acres in question, for we find that on June 29, 1943, the Police Jury in accordance with the provisions of Act 222 of 1936 and Act 419 of 1938 gave its specific consent to the expropriation by the City of New Orleans of certain other land situated in Kenner in the Parish of Jefferson for the use of the new airport near Kenner. The resolutions of the Police Jury set forth that the lands, which were particularly described, shall be dedicated or used exclusively for the purpose of flying fields or airfields of a public nature.
The resolutions above alluded to show without question that the Police Jury of Jefferson Parish had at all times approved the erection of the Moisant International Airport by the City of New Orleans and that there was such approval is forcibly evidenced by certain resolutions adopted by the Police Jury on October 30, 1944, November 9, 1945, and February 13, 1946, wherein the Police Jury employed special attorneys and authorized its President to see to it that the property of the Moisant International Airport, owned by the City of New Orleans, was properly placed on the assessment rolls of Jefferson Parish.
There is no question that whatever the City of New Orleans did in connection with the acquiring of property for the airport had the approval of the Police Jury.
*472 Counsel for plaintiff correctly say that in the cases cited above the public or quasi-public bodies involved all clearly had the power of eminent domain over the property they appropriated. But it is perfectly clear to us that the City of New Orleans likewise possessed the power of expropriating whatever property was necessary for airport uses and that the Police Jury gave consent to the City making expropriations whenever the City found it necessary to do so.
We construe the italicized language of Act 419 of 1938 as importing • only that the obtaining of the consent of the Police Jury is but a step in the carrying out of an expropriation and merely because the City, under the peculiar circumstances found here, did not obtain consent to expropriate the four acres, that it should not be said that the City of New Orleans is a trespasser and that the taking of the property was tortious.
Though the City of New Orleans did not obtain the Police Jury’s consent as was required by the 1938 Act, we, nevertheless, believe that this case comes squarely within the doctrine enunciated in St. Julien v. Morgan’s Louisiana & Texas Railroad Company, supra, and the other cited cases.
Counsel for plaintiff importune us that in the event this court sees fit to maintain' the City of New Orleans in possession of the property, we remand the case to the lower court so that the value of the property may be determined and proper judgment rendered in favor of the plaintiff. As authority for their position, counsel cite Amet v. Texas & P. Ry. Co., 117 La. 454, 41 So. 721, which we have carefully read and do not believe to support the proposition advanced by counsel. In the cited case all that the Court did, after overruling an exception which had been maintained in the court below, was to remand the case to the district court for further proceedings according to law.
The judgment appealed from correctly recognized plaintiff’s ownership of the four acres, but those portions of the judgment which decree that the City of New Orleans shall pay plaintiff compensation to be determined as of September 27, 1951, and reopen the case for the fixing of the amount of the compensation cannot be allowed to stand.
We believe that the decree entered by the Supreme Court in Roussel v. New Orleans Ry. & Light Co., supra, constitutes complete authority for the decree which we shall render in the instant case. In the Roussel case the plaintiff in a petitory action sought to recover from a public service corporation certain property which the corporation had taken and upon which it had erected improvements for public use. Plaintiff’s ownership of the property was recognized, but the Court amended the judgment so as to maintain the corporation in possession and relegated the plaintiff to an action in damages against the corporation for the value of the property at the time it was taken.
It is ordered, adjudged and decreed that the judgment appealed from, except insofar as it recognizes plaintiff to be the owner of the property, be and the same is hereby reversed, and it is further ordered that the judgment be amended so as to maintain the City of New Orleans in possession of the property of the plaintiff now in its possession and used in connection with the Moisant International Airport, and that the plaintiff herein be relegated to an action in damages against the City of New Orleans for the value of the property at the time of its taking for the said public purposes, and as thus amended it is hereby affirmed. Plaintiff-appellee is to pay the costs of this appeal; all other costs are to be paid by the City of New Orleans.
Reversed in part; amended and affirmed in part.
REGAN, J., dissents with written reasons.