LOTTINGER, Judge.
The trial judge rendered written reasons for judgment which we herewith set out in full:
“The plaintiff, alleging himself to be the owner of some 24}/£ acres of land in St. Tammany Parish and particularly described in Article II of his petition, brings this suit for damages in the sum of $2,000.00 for an alleged trespass on said property by the defendant Horns-by.
“The petition sets forth that the defendant Hornsby obtained a contract to perform certain drainage and dredging operations near Bayou Liberty at Slidell in the Parish of St. Tammany; that this contract was with the Police Jury of St. Tammany Parish and performed under the supervision of the Department of Public Works of the State of Louisana. The petition further alleges that the plaintiff’s property bordered on Bayou Liberty and while the defendant was performing his contract with the Police Jury of St. Tammany Parish relative to the dredging operations, he did dredge the said bayou and widen the same, causing the damage to the property of the plaintiff which bordered on said bayou. The plaintiff claims damages for the destruction of growing trees on the property to a value of $500; he claims $200 for cutting off approximately two acres of his land as a result of the changing of the course of the Bayou by the dredging operations; he claims $500 for the destruction of two flowing springs on the property; $50 for the destruction of a boathouse and $750 for damages caused by a large mud dump or levee thrown up on petitioner’s land adjacent to the banks of the said bayou. The petition further alleges that when the defendant would not amicably settle this claim the plaintiff did file and record his claim against the defendant under the contract, and that the defendant subsequently agreed to substitute a bond in the sum of $2,500 for the release of said claim. The defendant accordingly furnished a bond with the Maryland Casualty Company as Surety thereon, and accordingly judgment is also sought against the said Surety herein.
“The defendants in answer denied they were indebted to the plaintiff in any sum whatsoever for the reason that neither of the defendants ever trespassed on the property of the plaintiff. They further set forth that the defendant Hornsby, acting in pursuance of his contract with the Police Jury of the Parish of St. Tammany, entered upon all of the property of every kind pointed out by the Police Jury as condemned for the drainage, canal, and that the same had been surveyed and staked out by the Police Jury of the Parish of St. Tammany and he stayed within these stakes and operated as instructed by said Police Jury, and did actually construct the canal and erect the levee as he was required to do under his contract. He further set forth under the contract it was the duty of the Police Jury to obtain the rights of way for the drainage canal and that the Police Jury was a necessary party to the action, and he accordingly called the Police Jury in warranty herein. Assuming the position of plaintiff in re-convention the defendant set forth that due to the fact the plaintiff filed *159 an illegal claim against him for trespass and that he was forced to expend the sum of $250 as a premium for a bond, as well as $175 for attorney’s fees expended ; $500 for loss of time; traveling expenses $250, and attorney’s fees of $500 in defending this action, and accordingly he seeks recovery in re-convention in the sum of $1,875.
“The police jury as a result of the call in warranty answered and set forth that it entered into a contract with the defendant Hornsby for the construction of the drainage canals, but said defendant denied that it surveyed or staked out a right of way of the land owned by the plaintiff, or that it pointed out to the defendant Hornsby any land owned by the plaintiff as having been condemned for the drainage work in question. The defendant Police Jury further specifically denied that it authorized the defendant Hornsby to enter upon the plaintiff’s land, but on the contrary, notified him through his agent, that it had not secured a right of way from the plaintiff, and warned him not to enter upon the land until a right of way had been obtained or the land had been expropriated.
“The facts as developed on the trial of this case show that the defendant Hornsby entered into a contract with the Police Jury of St. Tammany Parish in March 1952 for the construction of certain drainage canals in the Parish of St. Tammany; the specifications for these drainage canals under the contract shows that the Police Jury of the Parish of St. Tammany was to obtain the rights of way for the work under the contract. It is further shown that the work was to be done under the supervision of the Engineers of the Department of Public Works. It is apparent from the testimony of these Public Works engineers that prior to the beginning of the construction of these canals, that surveys were made and stakes were placed where the said canals were to be dug; it is further apparent from the testimony that the position taken by the defendant Hornsby is that he had the right to enter any of these lands where these stakes were placed and do the dredging work irrespective of the fact as to whether he knew that the property surveyed had been obtained from the land owner in question. It is true that it was the duty of the Police Jury of St. Tammany Parish under the contract to obtain the necessary rights of way for these drainage canals, and in connection therewith the Police Jury had employed the services of Mr. Homer G. Fritchie, a surveyor of Slidell, Louisiana, to do this work. Mr. Fritchie’s testimony shows he made repeated efforts to obtain the rights of way over the property of this plaintiff for said drainage canals, but was unsuccessful in doing so, and that prior to the time that the sub-contractors of this defendant went on the property of the plaintiff, he having observed they were in the adjacent community with their equipment, he notified Police Juror Broom to instruct the operators of the defendant’s equipment not to go onto the plaintiff’s property, for the reason that the right of way had not been obtained. The testimony further shows that Police Juror Broom carried out the instructions of Mr. Fritchie and did notify Mr. Corbin, the bulldozer operator, not to go on the land of this plaintiff for the reason that the right of way had not been obtained; that irrespective of this warning, Corbin, who was acting for the sub-contractors Vincent and Hodkins, and had full authority, as shown by their testimony, proceeded to dig the drainage canal across this plaintiff’s property, causing the damage which forms the basis of this suit. Certainly the mere fact the property was staked off by the Department of Public Works, and the further fact that it was the duty of the Police Jury to obtain the right of way could not relieve this defendant, through his agents, from trespass on this plaintiff’s land when he knew, through his agents,. at the time he entered the land that he had *160 no legal right to do so. I am accordingly of the opinion that the defendant Hornsby is liable for the damages occasioned this plaintiff, and that no liability under the circumstances can attach to the Police Jury of St. Tammany Parish.
“The evidence shows that the plaintiff owned some 24j/^ acres of land on the east side of Bayou Liberty and that when the drainage canal was constructed across this property mud and debris was thrown on the banks of the plaintiff’s property for a distance of some 1800 feet. This mud and slush was some six feet in height, and at the base thereof some 40 feet in width. Plaintiff in his petition claims the sum of $750 for the removal of this dirt from his land, but I note from the testimony of his expert, Mr. Charles Fritchie, that he claimed it would cost $1,800 to remove said dirt. This was an estimate of $1 per foot by Mr. Charles Fritchie. On the other hand, the sub-contractor Vincent testified that this dirt could be removed for 10 cents per foot, making of course, a total of $180. These are the only two witnesses who testified as to this element of damage. I am of the opinion it would cost less than Mr. Fritchie testified it would to remove this dirt, and more" than as testified to by Mr. Vincent, and I fix the cost of the removal of this dirt at the sum of $600 which is approximately one-third more than as testified to by Mr. Vincent, and two-thirds less than as testified to by Mr. Fritchie — this fixing is, however, within $150 of the original claim made by the plaintiff.
“It is further shown as a result of the drainage operations a boathouse owned by the plaintiff, which was constructed with a tin roof .and supported by several posts, was destroyed. It is further shown that the siding from this boathouse had been removed therefrom by others. A claim of $50 is made for this boathouse, and even though it was of scanty construction, I seriously doubt that it could be replaced for a less figure under present prices, and this item will be allowed.. The plaintiff has claimed the sum of $500 for the loss of two springs that were on the property. It is apparent from the testimony that the dirt that was thrown on the plaintiff’s land covered these two springs, and I am of the opinion when , this dirt is removed the springs will be restored, and this item will not be allowed. The plaintiff claims $500 for loss of growing trees and timber on the property, and he has filed in this record an estimate made by William H. Davis, Jr., a timber estimator, to the effect that $398 worth of cypress, pine and hardwood timber was destroyed as a result of the dredging' operations. While I note this estimate is dated June 2, 1952, Mr. Davis testified that it was based on an estimate he made in 1951, and it is shown that in December 1951 Mr. Davis actually cut all the tim- ' ber larger than ten inches from said ’ property. I am inclined to believe this estimate was made when Mr. Davis actually cut the timber in 1951 and he actually cut and removed this amount of timber in December of 1951. My reason for reaching this conclusion is that Mr. Homer Fritchie, a surveyor and Mayor of Slidell, testified there was no timber on this right of way prior to the dredging operations. Mr. Vincent, sub-contractor, testified to a like effect. The plaintiff further claims the sum of $200 due to the fact that two acres of his land was cut off and placed on the west side of the Bayou .as a result of the drainage canal cutting through certain bends in the Bayou Liberty across his property. He not only claims the $200 for the loss of the land but further claims damages for the loss of the timber thereon, due to the fact he couldn’t get it out over the property which is on the west side of the bayou. He did not show he had made any effort to get this timber off the property or obtain permission from the adjacent landowners to remove it, and as a matter of fact, if there is any timber thereon he can remove it down the canal *161 that has been dug. Further .than this, even though the two acres of land was cut off and placed on the west side of the bayou, there is not one scintilla of evidence to show the value of the acreage of this land, and the court cannot resort to guess work and speculation in a determination of damages that should be allowed for these two acres. Accordingly, this item will not be allowed.
“As heretofore set forth, the Maryland Casualty Company as Surety on the bond was made a defendant herein, the bond being in 'the sum of $2,500. This bond was given by Hornsby to release the claim that the plaintiff had' recorded and filed in the office of the Clerk of Court of St. Tammany Parish.' The Police Jury naturally would not pay Hornsby thé ‘amount due under the contract until this claim was satisfied in some manner. Under the provisions of the contract for the construction of the drainage canal the contractor was responsible for any damage done to private property caused by any act of omission or neglect upon his part, and' he was further held to the duty as the contractor to keep the State and Parish harmless from any suits and claims of any character brought for any damages sustained by any person or property ■ on account of his negligence, etc. The contract further provided that the Police Jury - could withhold any monies due the contractor until such claims had been settled and suitable evidence furnished to -the Police Jury. I am of the opinion that the recording of this •claim by the plaintiff, while it did not constitute a lien against the fund owed' by the Police Jury to the contractor Hornsby, did serve notice on the Police Jury that this claim was outstanding and all the Police Jury did was" to re- ' quire the defendant Hornsby to furnish the bond in order • to protect it when it paid him the amount due him under the contract. Certainly, under the circumstances the plaintiff herein did not commit any illegal act iii filing his claim in the mortgage records of the parish, which would be notice to the Police Jury thát he had an outstanding claim against the defendant Hornsby. I might further note that while the defendant contends this was a lien, neither the plaintiff nor defendant sought to file evidence of this lien or claim, and no claim for that matter as recorded has been filed in this record. Since I am of the opinion that the plaintiff .had the right to bring notice to the Police Jury he had an outstanding claim by filing it in the mortgage records of the parish, then the reconven-tional demand of the defendant herein cannot be allowed.
“Accordingly, for the above and foregoing reasons, there will be judgment herein in favor of the plaintiff, M. J. Cousin and against the defendant H. B. Hornsby and Maryland-Casualty Company in the full sum of $650-with legal interest thereon at the rate of 5% per annum from date of judicial demand until paid.”
The matter is now before us on an appeal taken by the defendants, H. B. Horns-by and Maryland Casualty Company. The plaintiff has' answered the appeal seeking an increase in the damages awarded.
A careful review of the record discloses that the trial judge’s findings of fact are eminently correct and-we adopt them as our own.'
-We are of the opinion, however, that-the judgment rendered by the Lower Court-should be amended by awarding, judgment in favor of the defendants H. B. Hornsby and Maryland Casualty Company and against the Police- Jury of the Parish of St. Tammany for the said amount- that is awarded. in favor of the plaintiff against-the original defendants.
The plaintiff is suing for an alleged trespass upon his property where it was taken for drainage purposes iii the Parish of St. Tammany. The facts as we find in the record are that the Parish of St. Tammany contracted for certain drainage work, *162 among which was the cleaning out and straightening of Bayou Liberty. The surveys were made and the land definitely staked off. The defendant Hornsby subcontracted a portion of the drainage work, among which was the canal to be dug across plaintiff’s property. It really consisted of cleaning the bayou and straightening it out at one point. The plaintiff, who had lived in New Orleans for a number of years, came up to his property in May and the stakes were down then, and he also during his visit saw where the bulldozer had pushed a path within the stakes across his property preparatory to bringing in the dredge to do the actual cleaning and straightening of the bayou. He took no legal action nor action of a definite nature which would have enjoined or prevented the taking of his property.
The plaintiff had two courses to pursue: First, to protest, which we understand he did, and as a result of his protest Mr. Fritchie, the parish engineer, sent a message to the subcontractor not to go on the property, that the Police Jury had not yet secured the title to the right of way, although at that time a resolution authorizing the-filing of an expropriation suit had been passed by the Police Jury. Since the protest was unavailing, plaintiff then in order to procure his rights could have filed suit enjoining the Police Jury and the defendant through his subcontractor from going on his land, which, of course, would have forced expropriation proceedings. Secondly, he could have allowed the Police Jury through its contractor and sub-contractor to go on the property and he could sue for the value of the land taken as well as damages to the adjoining property as is always allowed in expropriation proceedings. In other words, a party may prevent the taking of or use of his land unless and until expropriation proceedings are filed and the value and damages are fixed in such a suit, or he may allow or acquiesce in the taking of his property by failing to take proper legal action to prevent the use of his property unless and until the value and damages have been fixed in an expropriation suit.
It must be remembered in this case that the plaintiff had full knowledge as shown by the record prior to the time the defendant subcontractor entered his property. He testified himself that he had been on the property and a witness offered by him who visited on weekends with him testified to facts which showed knowledge on his part that they were about to take his property. In fact, he employed his attorney before the contractors went upon the property but after it had been surveyed and staked off. The record further shows that the work was done in accordance with the contract and within the limits of the stakes, in other words, the Police Jury is getting exactly what they contracted for, and to allow them to get it at the expense of the contractor is inequitable and contrary to law. In other words, they got their drainage system through plaintiff’s property in accordance with the contract and they should pay the price consisting of the value of the land as well as damage to the adjacent land.
In our opinion this record shows no damages as a result of any act committed by the defendant and his subcontractor. Everything done was done in accordance with the contract except the act of going on the property prior to the actual expropriation thereof. No damages were committed outside the terms of the contract by this act. In other words, the plaintiff, with knowledge that the contractor was going upon his land to complete the drainage system in accordance with his contract with the Police Jury, did not choose to legally prevent such action and he is therefore relegated to only an action for the value of his land taken and damages to his adjacent property. This is exactly what he could have gotten and what the Police Jury would have had to pay him had he forced an expropriation suit, and it is exactly what he can get according to the authorities, once the improvement is placed on his property. We are not concerned with the question of removal for his suit is only one for damages. He would have had to yield the property had an expropriation suit been filed. See St. Julien v. Morgan’s La. & T. *163 R. Co., 35 La.Ann. 924; Gumbel v. New Orleans Terminal Co., 186 La. 882, 173 So. 518; Tate v. Town of Ville Platte, La.App., 44 So.2d 360 and Koerber v. City of New Orleans, La.App., 76 So.2d 466.
In other words the Police Jury had the right to expropriate this property, the plaintiff had the right to resist, however, he waived this right and under the law the plaintiff can now only get that which he could have gotten had he forced an expropriation proceedings, viz., the value of the land taken and damages incidental to the taking; the nature of such damages is well fixed in expropriation suits. While the cases cited involved to a certain extent the right to force a removal of railroad tracks or gas pipe lines and plaintiff is not seeking any such remedy in the present case, they are authority for the holding that once the improvement is placed upon the property with the knowledge and consent of the owner, which as we understand it may be specific or tacit or by knowledge and not action such as a failure to take legal action to prevent the taking of his property, he is then left only one remedy, of suing for the same damages he could have gotten had an expropriation suit been filed.
In our opinion the Police Jury cannot have its cake and eat it, too. It cannot say we told him not to go on the property and yet accept the completed works. In our opinion they are the proper party to pay for any all damages resulting from the execution of the contract which were the result of acts committed within the terms of the contract by the defendant. We fail to see in this record any facts which show any damages resulting from any act of the defendant other than as provided by the contract.
In so far as defendant contractor’s reconventional demand is concerned against the Police Jury for the claim for premium and bond, for attorney’s fees, etc., we do not believe that this contractor is entitled to said amount because, if he had followed instructions and stopped the work, he would not be in the controversy or position that he is today; in other words, it would not have been, necessary for him to furnish this bond and employ attorneys if he had followed instructions given by the Police Jury.
Therefore, under the circumstances, we are of the opinion that the judgment of the Lower Court should be affirmed and amended and same is hereby amended by awarding judgment in favor of the contractor H. B. Hornsby and Maryland Casualty Company against the Police Jury of the Parish of St. Tammany in the full sum of $650 with legal interest thereon at the rate of 5% per annum from date of judicial demand until paid and for all costs of this suit.
Judgment amended and affirmed.