161 So.2d 407 (1964)
Murphy P. MARIE et al., Plaintiffs-Appellants,
v.
POLICE JURY OF the PARISH OF TERREBONNE et al., Defendant-Appellee.
No. 6085.
Court of Appeal of Louisiana, First Circuit.
March 2, 1964.
Ralph E. Orpys, New Orleans, for appellants.
Duval, Arceneaux & Lewis, by Claude B. Duval, Houma, for appellees.
Before ELLIS, LOTTINGER, HERGET, LANDRY and REID, JJ.
ELLIS, Judge.
Plaintiffs have appealed from a judgment which sustained a plea to the jurisdiction rationae personae.
We are firmly of the opinion that the reasons for judgment given by the lower court cover all material points raised in the case and we therefore quote them with approval and adopt them as our own, together with additional reasons by this court in answer to arguments now made on appeal by the plaintiffs which were evidently *408 not made to the court below. We therefore proceed to quote the reasons for judgment of our learned brother below:
"Murphy P. Marie, O'Neil Marie, Essie Benoit, Eurie Marie and Roland P. Lirette, filed this suit in tort against the Police Jury of Terrebonne Parish asserting monetary claim for alleged damages to certain oyster beds and bedding grounds allegedly leased by them from the State of Louisiana. Plaintiffs assert that the damages resulted from the dredging of the Houma Deep Water Channel and `That as a direct and proximate result of said dredging, large quantities of silt have been deposited on and over said leases water-bottoms, and levees or dams created thereby have altered the natural tidal currents so as to affect the salinity of the water on said leased areas that the said leased areas have thereby been rendered useless * * *.' They allege that this damage was caused by the Terrebonne Parish Police Jury acting through its contractors, agents, employees and/or servants.
"Defendant Terrebonne Parish Police Jury filed exceptions to the jurisdiction asserting this Court's lack of jurisdiction over the subject matter as well as lack of jurisdiction over the person of the defendant, Terrebonne Parish Police Jury.
"In their exceptions the Terrebonne Parish Police Jury contend that as an agency of the State, while acting in a governmental capacity, it is immune from suits in tort against it by private citizens. Plaintiff's counsel, in argument, contends that the Terrebonne Parish Police Jury is not an agency of the State and therefore could not plead the immunity of the sovereign.
"The jurisprudence of this State is well established that a police jury, as a political subdivision of the State, falls within the scope of the doctrine of sovereign immunity. They are creatures of the State and have only such powers as are delegated to them by the sovereign.
"In the case of Wise v. Eubanks, 159 So. 161 (1935) the Court said:
"`* * * However, the ruling of the lower court in sustaining the exception filed by the police jury was based upon the legal principle that police juries, being state agencies, with only delegated powers, in the performance and discharge of their governmental functions, cannot be held responsible for the negligence of their agents and employees * * *. We agree with this ruling.'
"In the case of Smith v. Police Jury of St. Tammany Parish, 192 La. 214, 187 So. 553 (1939) our Supreme Court declared:
"`Parishes are not responsible for damages caused by the negligence of the Police Juries in matters of this kind. * * * As relates to the building and repairing of roads and bridges, police juries have only delegated authority, and, when they act in matters of this kind, they do so as agents or instrumentalities of the State and their governmental functions. In so far as liability for negligence in such matters is concerned, the police juries can no more be held liable than the State itself could be. The jurisprudence of this State is settled to the effect that police juries, being subdivisions of the state and instrumentalities of government, exercising only such authority as is given them by the State relating to the matter of building roads and bridges and keeping them in repair, are not liable for the negligence of their officers in failing to build safe bridges or to keep them in repair. * * *'
"There are many other such cases, the citation of which we deem unnecessary.
"In Article 3, Section 35 of the Constitution of Louisiana, recognizes the immunity and provides that a suit in tort *409 by a private person can be brought only if the Legislature should waive the immunity. (See Article 3, Section 35 of the Constitution.)
"It is also well established that the State and its political subdivisions or agencies are immune, while acting in a governmental capacity, from suits in tort filed against them by private persons. See Article 3, Section 35, Louisiana State Constitution; Angelle v. State of Louisiana, 212 La. 1069, 34 So.2d 321, [2 A.L.R. 2d 666] (1948); Cobb v. State Board of Institutions, 229 La. 1, 85 So.2d 10 (1955); Duree v. Maryland Casualty Co., 238 La. 166, 114 So.2d 594 (1959).
"Of particular importance is the case of Angelle v. State of Louisiana, supra. In that case plaintiff sued the Department of Agriculture and Immigration and the State of Louisiana, alleging loss of property caused by a fire which had started while a Department of Agriculture truck was engaged in an insect eradication program. As a result of the fire, the railroad station, processing machine and its produce were destroyed. The State and the Department filed exceptions to the Jurisdiction of the Court and our Supreme Court sustained the exceptions dismissing the suit. In the course of its opinion, the Court stated:
"`The principle that the sovereign cannot be sued in its own courts without the consent of the Legislature is so fundamental that citation of an authority would be supervluous.'
"In the Angelle case, counsel for plaintiff argued that the destruction of the plaintiff's property by fire, while it was being subjected to disinfection by State agents, was an expropriation of the property for a public purpose and, therefore, the case fell within the perview of the eminent domain provisions of Article 1, Section 2 of the Constitution. The Supreme Court summarily dismissed this argument and defined the meaning of the Constitutional prohibition against the taking or damaging of private property. In doing so, the Court declared:
"`We think that the statement refers exclusively to the power of eminent domain, i. e., the intentional or purposeful expropriation or appropriation of private property for a public use or convenience.'
"Again, in the Angelle case, counsel argued that since the Department of Agriculture was engaged, as authorized by law, in a program for the eradication of insects, the acts of the State agents were therefore for a public purpose and any destruction of private property, though unintentional, or unnecessary, was a taking of property for a public purpose. The Supreme Court answered this argument as follows:
"`This argument is not sound because it fails to reckon a distinction between the destruction and damaging of private property by agents of the State while engaged merely in the performance of a governmental function and the deliberate taking or necessary damaging of property for the public use and benefit. In the first instance, the destruction or damage occurs not for a public purpose but by reason of the negligence of the state officers or agents.'
"In the case before the Court, the plaintiff in substance alleges that the proximate cause of its damages was the negligence of the Police Jury in causing quantities of silt to be deposited on the leases and altering the tidal currents. Here, there is no deliberate taking or unnecessary damaging of property for the public use and benefit.
"Plaintiffs' counsel, in support of his position, cites the case of Cousin v. Hornsby, [La.App.,] 87 So.2d 157, which was a suit against an independent contractor who in turn called the police jury in warranty under its contract. The Court therein held *410 that the Police Jury should pay the amount adjudged against the independent contractor because the independent contractor had done nothing but carry out its contract with the police jury. The Court pointed out that the property of the plaintiff was physically taken and to that extent plaintiff was entitled to payment. The Court particularly noted that the Police Jury should not be enriched to the point of the actual taking of property for governmental use without paying its value.
"We believe this case to be inapplicable for the reason that in the present case there is no taking of property but rather the unintentional damage to property as a result of negligence.
"In argument of the above exceptions before this Court, Texaco, Inc., a codefendant, argued that it is not directly affected by the exceptions urged by the Terrebonne Parish Police Jury, however, it noted for the record at the time of trial of these exceptions that since a judgment sustaining said exceptions might affect Texaco, Inc. in this suit, it reserves all rights to further plead and effect any course of action necessary either in the instant case or through any other appropriate action. There fore, the ruling in this case is not to be construed or held as a waiver of any rights Texaco, Inc. may have against its co-defendant, Terrebonne Parish Police Jury.
"For the above and foregoing reasons, judgment will be rendered dismissing the plaintiffs' claim against Terrebonne Parish Police Jury, however, reserving to Texaco, Inc., co-defendant, any rights it may have against Terrebonne Parish Police Jury."
Counsel for plaintiff in brief before this Court sets forth the following argument:
"In its brief, Defendant-Appellant has cited several Supreme Court decisions, and relies most heavily on that of Angelle vs. State of La., 212 La. 1069, 34 So.2d 321 (1948). We submit that the Angelle case is clearly distinguishable on its facts from the case at bar, in that there was no allegation in the Angelle case of a taking of property, while in the instant case the Plaintiff-Appellee has clearly alleged acts that constitute a taking of property, viz:
"`2. That the Police Jury of the Parish of Terrebonne, acting through various contractors, agents, employees and/or servants, has caused a certain canal * * * to be dredged over, through, or in the vicinity of said above described (oyster bed) leases * * *.' Thus the ruling of the Angelle case relied on both by the Appellant and by the District Judge in his reasons for judgment, has no application to the instant case. It should be noted that the defendant Police Jury has caused its various independent contractors to be made third party defendants herein, by appropriate pleadings. Their presence in the case, we submit makes the case of Cousin vs. Hornsby, La.App., 87 So. (2d) 157, decided by this Honorable Court on April 27, 1956, especially applicable. In that case the plaintiff, a landowner, sued a dredging contractor for damages incurred as a result of unauthorized dredging. The lower Court rendered judgment against Hornsby alone, dismissing the Police Jury. On appeal, Hornsby contended that should he be held liable to the plaintiff, the Police Jury should be condemned to pay the judgment because of its contractual relationship to Hornsby. In a very well considered opinion, this court upheld Hornsby and amended the Lower Court's judgment by holding the Police Jury liable in solido with Hornsby, noting that a State agency `cannot eat its cake and have it too' (sic); i. e., having accepting the benefits of the dredging contract, it should and could not be heard to escape liability to the plaintiff merely because it is a State agency.
"The Cousin case is the latest expression of the law, having been decided eight years later than the Angelle decision. It represents the modern trend to abolish the artificial shield of immunity for State agencies. Furthermore, its facts are plainly parallel to those of the instant case, *411 which, as we have demonstrated above, are distinguishable from those of the Angelle case.
"It is significant that the Defendant-Appellant saw fit to implead its contractors in this matter. They would have no place in the instant controversy were it not for their contractual relationship with the defendant (exactly as in the Cousin case); hence the Police Jury has tacitly admitted that it has accepted the benefits of its contracts. We submit that this presents the identical factual situation found in Cousin vs. Hornsby, and that Your Honors must rule here as you did there."
We cannot agree with counsel's argument that Angelle v. State of Louisiana is clearly distinguishable factually from the case at bar as revealed by the allegations of plaintiff's petition. Counsel for plaintiffs herein are attempting to do the same thing as was done by counsel for plaintiffs in the Angelle case, viz., because they fully appreciate the difficulty to be encountered by instituting suit against the State without legislative consent, are attempting to substitute the theory that the destruction of the oyster beds allegedly resulting from the dredging of the canal which allowed large quantities of silt to be deposited over and on the water bottoms, and the levees and dams created by the work on the canal had altered the natural current so as to affect the salinity of the water over the oyster beds, thereby rendering them useless for the cultivation of oysters, was an appropriation of the property for a public purpose, violative of Article 1, Sec. 2 of the Constitution, LSA. In order to do this counsel cites the allegations of Article 2 of plaintiff's petition wherein it is alleged the Parish, acting through various contractors or other agencies and employees, had caused this Houma Deep Water Channel canal to be dredged "over, through or in the vicinity of said above described leases; * * *". Article 3, however, sets forth with particularity the direct and proximate result of the dredging and clarifies the meaning of Article 2 of plaintiff's petition. Summed up, the two articles charge the police jury of the Parish of Terrebonne, acting through contractors or agents, employees and/or servants, had dredged the canal known as the Houma Deep Water Channel in such a manner that the water bottom allegedly leased from the State Wild Life and Fisheries Commission by the plaintiff for the cultivation of oysters had been rendered useless because of the silt deposit and alteration of the natural tidal currents which affected the salinity of the water. Nowhere in the petition does the plaintiff charge an appropriation of the property so as to bring it within the exception to the principle that the sovereign cannot be sued without its consent. Plaintiff's suit is nothing more nor less than as found by the District Court and not one of a deliberate taking and unnecessary damaging of property for public use and benefit.
Counsel also misunderstands the basis of the case of Cousin v. Hornsby, supra, decided by this Court. The legal basis for recovery in this case as shown in the opinion in 87 So.2d on page 162, 163, is as follows:
"In our opinion this record shows no damages as a result of any act committed by the defendant and his subcontractor. Everything done was done in accordance with the contract except the act of going on the property prior to the actual expropriation thereof. No damages were committed outside the terms of the contract by this act. In other words, the plaintiff, with knowledge that the contractor was going upon his land to complete the drainage system in accordance with his contract with the Police Jury, did not choose to legally prevent such action and he is therefore relegated to only an action for the value of his land taken and damages to his adjacent property. This is exactly what he could have gotten and what the Police Jury would have had to pay him had he forced an expropriation suit, and it is *412 exactly what he can get according to the authorities, once the improvement is placed on his property. We are not concerned with the question of removal for his suit is only one for damages. He would have had to yield the property had an expropriation suit been filed. See St. Julien v. Morgan's La. & T. R. Co., 35 La.Ann. 924; Gumbel v. New Orleans Terminal Co., 186 La. 882, 173 So. 518; Tate v. Town of Ville Platte, La.App., 44 So.2d 360 and Koerber v. City of New Orleans, La.App., 76 So.2d 466.
"In other words the Police Jury had the right to expropriate this property, the plaintiff had the right to resist, however, he waived this right and under the law the plaintiff can now only get that which he could have gotten had he forced an expropriation proceedings, viz., the value of the land taken and damages incidental to the taking; the nature of such damages is well fixed in expropriation suits * * *".
Far from representing any modern trend toward the abolishment of the "artificial" shield of immunity for State agencies, the above decision of this court fully recognizes the constitutional shield of immunity for State agencies and strictly follows the exception to that rule where property is taken "for public purposes" with the right of the owner to recover adequate compensation, and even though the owner took no prior action to prevent the placing of the improvements upon his property, he is nevertheless entitled to sue for the same damages he could have gotten had an expropriation suit been filed. Such is the law as set forth in the jurisprudence cited in the quote from the case, supra.
Counsel also in brief relies upon Burris v. City of New Orleans, 86 So.2d 549, Rome v. London & Lancashire Indemnity Co., La.App., 168 So. 132, Brown v. Parish of East Baton Rouge, La.App., 126 So.2d 173 and cases cited therein, and Bond v. City of Baton Rouge, La.App., 129 So.2d 887.
These cases are not apposite as they all are concerned with the question of governmental immunity of a municipality from liability for torts committed in the exercise of a governmental function. In the Burris case the court was concerned with the question of immunity of the City of New Orleans from liability for the death of a child in a pool or pond which the city was charged with permitting to exist in such manner and locality as to readily attract play-pursuing eyes of a child. The other cases cited deal with the question of immunity of municipalities for damages occasioned by their failure to repair public streets and sidewalks. We feel the law regarding the question applicable to municipalities was correctly set forth by this Court in the Brown case, supra, and we quote:
"Conceding both the Stephens and Duree cases, supra, were decided subsequent to our decision in the Carlisle case, we find nothing in either the Duree or Stephens cases indicative of intention to abandon or deviate from the well recognized exception to the general rule of governmental immunity from liability vel non from torts committed in the exercise of a governmental function, which has been established by the jurisprudence of this state and holds that such immunity does not exist with respect to municipalities sued in damages for alleged failure to repair and maintain streets and sidewalks.
"`The tort liability of municipal governing authorities for damages resulting from the failure to keep streets and sidewalks in a reasonably safe condition for travel has traditionally not been subject to the defense of governmental immunity, nor to the prerequisite of legislative consent to suits to recover such damages. Carlisle v. Parish of East Baton Rouge, La.App. 1 Cir., 114 So.2d 62, and authorities therein cited. Thus the holdings of the *413 Duree and Stephens cases, above-cited, have no application to the present appeal; for they simply held that due to the wording of Article 3, Section 35, the legislature was not empowered by waiving the State's immunity, to create a cause of action when non (sic) theretofore existed.' (119 So.2d 631)
"It follows, therefore, the trial court erred in decreeing the principle of constitutional immunity from tort liability applicable to defendant parish herein."
For the above and foregoing reasons we are of the opinion that the judgment of the District Court is correct and it is hereby affirmed.
Affirmed.