(115 So. 473)

No. 28634.

**McGEEHAN et al. v. BOARD OF LEVEE COM'RS.**

**In re McGEEHAN et al.**

Jan. 18, 1928.

*(Syllabus by Editorial Staff.)*

1. **Levees and flood control** ⬅️19—**Levee board's removing earth from land not burdened with servitude for levee purposes, in emergency, held not tortious.**

   In action by the owner of land adjacent to levee for the levee board's having removed earth from such land for use in an emergency, *held* that such removal was not tortious, although land was not burdened with a servitude for levee purposes, since removal in time of emergency came within police powers of the state as exercised by the board.

2. **Levees and flood control** ⬅️19—**Owner from whose land earth was removed by levee board and used in emergency held entitled to compensation, regardless of contract therefor.**

   In action by the owner of land adjacent to a levee for the allegedly tortious removal of earth from his land for use in emergency purpose, *held* that it was immaterial whether or not the board had promised to compensate the owner for the property before taking it, since owner is entitled to compensation for property so taken under the police powers, and, in promising to pay for it, the board would merely be doing that which the law requires it to do.

Separate actions by William J. McGeehan and Grace Mary McGeehan against the Board of Levee Commissioners, etc., consolidated upon trial. A judgment for plaintiffs was reversed, and the cause dismissed by the Court of Appeal, whereupon plaintiff made application for certiorari or writ of review. Writ issued, and judgment of the Court of Appeal avoided and set aside, and judgment of the district court reinstated and made the judgment of the Supreme Court.

Dart & Dart, Louis C. Guidry, and S. F. Gautier, all of New Orleans, for applicants.

Benjamin T. Waldo, Gen. Counsel Board of Levee Commissioners, and Eberhard P. Deutsch, Asst. Gen. Counsel, both of New Orleans, for respondent.

BRUNOT, J. The relators filed separate suits against the board of commissioners of the Orleans levee district. The petitions in both suits are identical in all respects except as to the descriptions of the particular properties owned by the plaintiffs and the quantity of earth alleged to have been removed from their respective properties. The suits were consolidated and tried together in the lower court, and judgment was rendered in favor of the plaintiffs for the sums prayed for in each petition. An appeal from the judgment was taken to the Court of Appeal, and that court held that the suits were actions "sounding in damages ex delicto," and for that reason it reversed the judgments and dismissed the suits. Application was made to this court for certiorari or writ of review. The writ issued, the record has been sent up in response thereto, and the consolidated cases are now before us.

The facts are that each of the relators own a square of ground situated in the Seventh district of New Orleans, near the upper protection levee of the city. Their properties are not subject to a servitude for levee purposes. During an emergency, in the month of May, 1922, the board of commissioners of the Orleans levee district, which we will hereafter designate as the levee board, through its agents, servants, employees, and contractors, entered upon relators' properties and ex-

cavated and removed from the property of William J. McGeehan 300 cartloads of earth, and from the property of Grace Mary McGeehan 311 cartloads of earth, which the levee board appropriated to its own use, without the consent of the owners of the property and without compensating them therefor or restoring either property to its former condition, although demand was made upon said board to do so, and that the earth so removed is worth $1.50 a cartload, or about 75 cents per cubic yard.

The relators filed suits against the levee board on March 19, 1923, in which judgments of nonsuit were rendered, and the suits now at bar were then instituted. Before answering the suits, the defendant filed a plea of prescription and the exception of no cause of action. The plea of prescription was correctly disposed of by the Court of Appeal in a few words, as follows:

"As to the plea of prescription, it is not sound, for the present suits were filed within one year, if allowance for the interruption of prescription by judicial proceedings is made, as of course must be done."

The Court of Appeal did not directly pass upon the exception of no cause of action, but its judgment, in effect, sustains that exception.

As the facts in both cases are clearly with the plaintiffs, who are the relators here, there is but one question which the court is called upon to determine, viz.: Whether the levee board, in meeting an emergency, acted tortiously and illegally when it entered the premises of the plaintiffs and removed earth therefrom for levee purposes.

In our opinion the case of Widow and Heirs of Paul Koerber v. New Orleans Levee Board et al., 51 La. Ann. 523, 25 So. 415; Id., 52 La. Ann. 2110, 28 So. 318, disposes of the levee board's contention. The cited case involved the same defendant, the same levee, and strikingly similar facts to those pre-

sented in the cases at bar. In that case, Chief Justice Nicholls, the organ of the court, said:

"Danger confronted the city, not only from the levees directly upon its river front, but from the waters which would flow into it from the sides and rear, from breaks in the levees in the parish of Jefferson, which parish adjoined on its lower line the upper line of the parish of Orleans.

"Called to take action, the Orleans levee board determined to meet the latter danger by raising and broadening a levee, known as the protection levee, which had been constructed a number of years before. That levee ran almost at right angles from the Mississippi river along the boundary lines between the two parishes just named, back to the swamp.

"To accomplish the object in view it was necessary that earth should be taken from the properties lying along and near the base of this levee to be thrown upon the levee.

"The plaintiffs in this suit owned land just in that situation. Property so situated was not held subject to a servitude for the erection of levees running back from the river.

"Regularly, it could only be taken for such purpose for public use by means of judicial expropriation, proceeding upon proper compensation made according to law. *It was, however, liable to be so utilized, under the exercise of the police power of the state, when called into action by emergency admitting of no delays.*" (Italics by the court.)

We have italicised the last sentence of the quotation to emphasize the fact that the court specifically declared that, in an emergency admitting of no delay, the levee board may, under the exercise of the police power of the state, lawfully remove earth from land adjacent to a levee, although it may not be burdened with a servitude for levee purposes, without the necessity of first resorting to expropriation proceedings.

[1] The record before us discloses that an emergency existed which, in the opinion of the board's engineers, did not admit of delay, when plaintiffs' premises were entered and earth removed therefrom for the purpose of strengthening the protection levee. Inasmuch as the levee board, under the circumstances, could lawfully act, in the premises, under

the police powers of the state, it is not chargeable either with trespass or a tort, and the conclusion of the Court of Appeal that these suits grow out of acts "sounding in damages ex delicto" is therefore erroneous. The doctrine announced in the Koerber Case has not been modified by the later decisions of this court; on the contrary, it has not heretofore been questioned. The right of an aggrieved owner to recover the cost of removing débris which had been left on his property by the levee board and his right to recover adequate compensation for damage done to his improvements by the agents or employees of the levee board, acting within the scope of their authority, was recognized and applied in the last expression of this court on the subject, which is the case of Green v. Board of Commissioners of Lake Borgne Levee District, 163 La. 117, 111 So. 619.

Defendant seeks to differentiate the Koerber Case, which we quoted from supra, from the cases at bar, because, in the Koerber Case, the levee board gave the owner of the property a written promise to restore the property to its original condition before removing any earth therefrom. In that case the levee board replaced a quantity of earth on the plaintiff's property, but the court found that it had not restored the property to its original condition and that something was due the plaintiff, but the record did not disclose sufficient facts upon which to base a judgment for any specific sum, and it remanded the case. When the case came before the court a second time, it awarded the plaintiff a judgment for the sum found to be due him.

[2] We think it is immaterial whether or not the levee board promises to restore the property or to compensate the owner for it, before taking it. If it promises to do so, it merely promises to do what the law requires. The right of the owner of the property to recover adequate compensation for property, under the circumstances presented in the cases before us, cannot be affected by any promise the levee board may or may not have made, and for that reason we do not consider it necessary to comment upon the letter of the attorney of the levee board, in which an offer to pay the plaintiffs a sum less than is demanded was made.

In the case of Louisiana Society, etc., v. Board of Commissioners, etc., 143 La. 90, 78 So. 249, the court, on rehearing (page 110 [78 So. 255]) says:

"It will be conceded that the purpose for which this republican government was established was to secure those by whom it was established and their successors, in their rights of life, liberty, and property, and that, even though the Constitutions, federal and state, contained no special provisions upon the subject, it would, in a great measure, defeat that purpose if a citizen could be deprived of those rights without due process of law, and as to his property without just compensation. In order, however, that there should be no room for doubt, the Fifth and Fourteenth Amendments were added to the Constitution of the United States, the one, confined in its application to the federal government, and declaring, inter alia, that no person shall be 'deprived of life, liberty or property without due process of law, nor shall private property be taken for public use without just compensation'; the other reading in part, 'nor shall any state deprive any person of life, liberty, or property without due process of law, nor deny to any person within its jurisdiction the equal protection of its laws.' And similar provisions have been incorporated in the Constitutions of probably all of the states."

For the reasons assigned, the judgment of the Court of Appeal is avoided and set aside, and the judgment of the district court is reinstated and made the judgment of this court; the costs of this proceeding to be paid by defendant.