202 So.2d 24

**Reuben F. GRAY et al.**

v.

**STATE of Louisiana, Through the DEPART-
MENT OF HIGHWAYS et al.**

**No. 48501.**

June 30, 1967.

Dissenting Opinion Sept. 15, 1967.

Philip K. Jones, Norman L. Sisson, Robert J. Jones, Baton Rouge, for applicants-appellants.

Frederick W. Ellis, C. A. Miller, Jr., John B. Scofield, Lake Charles, for respondents-plaintiffs.

McCALEB, Justice.

This suit is an aftermath of the condemnation proceeding brought by the State,

through the Department of Highways v. Bordages et al. (La.App.) 156 So.2d 617, in which 26 acres of a large tract of land (650 acres owned in indivision by some 70 persons) and a temporary servitude consisting of 22.22 acres for borrow pit purposes were expropriated under R.S. 48:441–460 in connection with the construction of Interstate Highway 210 through Calcasieu Parish. This is an action *ex delicto* by many of the landowners for recovery of $740,000 damages for an alleged trespass on an unexpropriated portion of their land by the Department and the removal therefrom of 120,000 cubic yards of dirt which was used in the construction of the highway. Joined with the Department, as defendants, are the excavator of the borrow pit from which the dirt was removed, W. R. Aldrich & Company, and the latter's liability insurer, National Surety Corporation.[1]

The Department denied liability and reconvened, seeking as an offset against any award which might be allowed the plaintiff landowners the amount of compensation it had paid plaintiffs in the Bordages case for the properly expropriated, but unused, borrow pit on another portion of the land. Thus, the issue in the case is essentially whether an action *ex delicto* will lie for the recovery of damages resulting from an intentional appropriation (actually an expropriation which, as hereinafter pointed out, has been determined illegal for failure to comply strictly with certain constitutional and statutory requirements) by the State of private property for a public use or whether the landowner's right to compensation is confined to recovery of the market value of the property appropriated together with such severance damages he sustained as a result of the taking. At this point, however, it is in order to state the facts and events which preceded the institution of the lawsuit.

In the Bordages matter, the Department secured on September 28, 1961, an order of court expropriating, under R.S. 48:441–48:460, the full ownership of a 26-acre strip of land across the 650-acre tract for Interstate Highway 210. Simultaneously, the Department expropriated a temporary servitude for borrow pit purposes affecting 22.22 acres located on the *east* side of the proposed highway right-of-way, which servitude was limited to the duration of the project. The sum of $104,666 was deposited in the registry of the court as just compensation for the property and rights expropriated. This amount was withdrawn by

---

1. These two defendants were cast, in solido, with the Department by the Court of Appeal, the surety company, however, for the $100,000 limit of liability under its policy. As neither one has applied for writs, they are no longer parties to the proceeding. Nevertheless, in final analysis, their ultimate liability depends on that of the Department as it has contracted to hold them harmless in the premises.

plaintiffs and the other landowners under orders of court issued during 1961 and 1962.

These expropriation orders were issued in strict accordance with the provisions of R.S. 48:441 et seq. However, some seven months thereafter, on June 7, 1962, and before any excavation work had been performed, the Department filed a supplemental and amending petition in the then pending suit in which it prayed for a change in the location of the area affected by the temporary borrow pit servitude from the original tract on the *east* side of the highway to a new and different 22.22 acre tract on the *west* side of the highway. A plat showing the site of the new servitude was attached to that petition and the Department further prayed that the title to the temporary servitude theretofore taken, which was described in the original petition as "Borrow Pit Area D", be restored to the defendants in that case (plaintiffs in this one). In accordance with the allegations and prayer of this supplemental and amended petition, the court issued an order on the same day expropriating the 22.22 acre area situated on the *west* side of the highway for borrow pit purposes in place of the temporary servitude on the *east* side of the highway and it was further ordered that the temporary servitude on the *east* side be and it was restored to the landowners.

This change in the location of the expropriated borrow pit servitude was effected by the Department as an accommodation to one of the industries owning land on the east side of the highway near the borrow pit originally expropriated. It appears from the record that Mr. Oliver Stockwell, a prominent member of the Lake Charles Bar, representing this corporation, Pittsburgh Plate Glass Company, contacted Mr. Ted W. Price, Chairman of the Louisiana Department of Highways Board, and requested an appointment with Mr. Ray Burgess, Director of the Department of Highways, on behalf of Mr. Al Raetzsch, the Manager of Columbia Southern Pittsburgh Plate Glass Company. Thereafter, Price, Stockwell, Raetzsch and Burgess had a conference in Baton Rouge at which Raetzsch requested a change in the location of the original borrow pit because of its proximity to his company's plant, pointing out that the land which had been expropriated on the east side of the highway was the only land available to the company in the event it found it advisable to expand its operations. Price testified that he thought this was a reasonable request and, subsequently, the change in the borrow-pit from the east to the west side was effected by the supplemental petition and order to which we have hereinabove referred.[2]

2. In this connection, it is interesting to note that Mr. Leonard E. Pauley, an ex-

pert witness for the plaintiffs in this case, testified respecting the industrial

Acting under the formal (albeit ex parte) amended order of expropriation of June 7, 1962, the Department, on June 15, 1962, commenced clearing operations on the west side tract and, on September 15, 1962, the contractor began the excavation work.

On June 18, 1962, three days after operations had commenced, many of the plaintiff landowners appeared and filed motions to dismiss the supplemental and amending petition and rescind the order granted pursuant thereto for various reasons. However, the only substantial ground alleged was that the Department had violated the quick-taking statutory provisions in failing to obtain a new appraisal of the property expropriated. After a hearing, the motions were sustained on this ground by the trial judge and, on· January 3, 1963, judgment was entered rescinding and recalling the supplemental and amending order of expropriation. On January 14, 1963 the judgment was signed and, thereafter, the Department prosecuted its appeal to the Court of Appeal, Third Circuit, where the judgment of the trial court was affirmed. See State, Through Dept. of Highways v. Bordages (La.App.) 156 So.2d 617, cert. den. 245 La. 462, 158 So. 612 (December 16, 1963).

Meanwhile, on June 3, 1963, the operations conducted at the west side servitude site were concluded. Then, two days later, the plaintiff landowners filed the instant suit to recover damages for trespass and conversion under Articles 507 and 2315 of the Civil Code—that is, they seek the value of the earth and other materials removed from the west side servitude and also the damages they allegedly sustained as a result of the claimed unlawful acts of the defendants.

The Department, as stated, resisted the demand. It filed an exception of no right of action predicated on the proposition that the servitude was taken for highway purposes and, therefore, the only action available to plaintiffs is their right to just compensation for value of the property taken and severance damages. In a reconventional demand, the Department specially pleaded that plaintiffs had been unjustly enriched when they received and kept that part of the compensation deposited in the registry of the court attributable to the unused borrow-pit on the east side of the road, and it claimed that this amount should be credited and offset against plaintiffs' claim.

After a hearing the trial court, in a well reasoned opinion, rejected plaintiffs' demand for damages *ex delicto* and awarded judgment in their favor for $33,625, concluding that plaintiffs' recovery is limited under the Constitution and law to the mar-

development on the east side of the highway. He stated that the property on the west side would only be useful to a new industry in view of the fact that the land

on that side was industrially valuable for oil activity, whereas the unused side already had industry located there and was more valuable.

ket value of the temporary servitude, plus such severance damages they have sustained as a result of the appropriation of the property for a public purpose.[3]

The plaintiff landowners and the Department appealed from the decision of the lower court. The Court of Appeal, Third Circuit, reversed the main finding of the trial judge and held the Department responsible for damages under Civil Code Articles 507 and 2315, deducing that the appropriation of the plaintiffs' land was tortious and that the Department and its contractor were trespassers in legal bad faith, liable, as such, for the value of the dirt taken and used in the construction of the highway. Conformably with this view, the award of the district court was increased to the sum of $119,682.84 and the judgment was further amended so as to hold National Surety solidarily liable with the Department and Aldrich up to its policy limit of $100,000. The court, however, allowed an offset in favor of the Department in the sum of $8360, which it found the Department had paid plaintiffs in the Bordages suit as severance damages for the unused temporary servitude expropriated on the east side of the highway. A vigorous dis-

sent was written by one of the judges composing the panel which heard the case and, on application for a rehearing, the dissenting judge and another member of the court, who did not participate on original hearing, dissented from the refusal of the Department's application for a rehearing. See Gray v. State, Through Department of Highways, La.App., 191 So.2d 802. This Court granted the Department's application for certiorari, 250 La. 27, 193 So.2d 531.

We think the prevailing opinion of the Court of Appeal patently erroneous. Indeed, in view of the above stated facts, we perceive no justification for plaintiffs' extravagant demands for redress in tort and find little law to support it.

▆▆▆ Although the temporary servitude on the west side of the highway was taken for public purposes and unquestionably in good faith, the supplemental order was nevertheless invalid by reason of the Department's failure to comply with the law. Accordingly, the taking must, perforce, be regarded as an appropriation of private property for public purposes for which the landowners are entitled to the recompense provided by our Constitution and laws.[4]

---

3. The court further held the contractor, Aldrich, solidarily liable with the Department for the amount awarded but dismissed the demand against National Surety on the ground that it was not within the intended coverage of the policy of insurance. As stated in Footnote No. 1, these two defendants were cast by the

Court of Appeal and are no longer in the case since they did not apply for writs of review.

4. Louisiana Constitution, Article I, Sec. 2; Article IV, Section 15; Article VI, Section 19.1 (as added in 1948); R.S. 48:441, et seq., Civil Code Article 497.

Section 2 of Article I of the Constitution provides that " * * * private property shall not be taken or damaged except for public purposes and after just and adequate compensation is paid." Thus, the owner is guaranteed full recompense for the taking, the measure of just compensation being the market value of the land and whatever severance or consequential damages he has sustained by reason of the diminution in market value of the remaining property not taken. And, according to the well-settled jurisprudence, this measure of compensation is to be estimated by the same standards whether the property taken is formally expropriated in accordance with law or appropriated by the condemning authority so long as it is intentionally taken for a public use. See Harrison v. Louisiana Highway Commission, 191 La. 839, 186 So. 354; Aleman v. Sewerage & Water Board of New Orleans, 196 La. 428, 199 So. 380; Schneidau v. Louisiana Highway Commission, 206 La. 754, 20 So.2d 14; Angelle v. State, 212 La. 1069, 34 So.2d 321, 2 A.L.R. 2d 666 and the following decisions of our Courts of Appeal: Tate v. Town of Ville Platte (1st Cir.) 44 So.2d 360; Beck v. Boh

Brothers Const. Co. (Orleans) La.App., 72 So.2d 765; Cousin v. Hornsby (La.App., 1st Cir.) 87 So.2d 157 and Marie v. Police Jury of Terrebonne Parish, (La.App., 1st Cir.) 161 So.2d 407.

The Court of Appeal conceived, however, that, whereas the market value of the property is the ordinary measure of compensation in a legally authorized expropriation suit under the Constitution and laws, this does not mean that the same measure of compensation is to be applied when the property is taken or damaged for a public purpose before payment of compensation, or as a result of the sovereign's failure to comply strictly with the expropriation laws. On this predicate the court went on to find that, since the amended order substituting the west side borrow-pit area for the unused east side borrow-pit area was invalid due to the Department's failure to have the west side area appraised in accordance with the "quick taking" statute, the Department's possession and occupancy of the west side area was unlawful, constituting a trespass in legal bad faith for which the Department must respond in tort.[5]

5. In reaching this conclusion the Court of Appeal relied upon Angelle v. State, 212 La. 1069, 34 So.2d 321, 2 A.L.R.2d 66 and the cases of McGeehan v. Board of Levee Com'rs, 165 La. 241, 115 So. 473 and Booth v. Louisiana Highway Commission, 171 La. 1096, 133 So. 169, which the court stated had been expressly approved in the Angelle decision. We think the Court of Appeal has misinterpreted the

Angelle case for, there, this Court was concerned only with the question of whether the State could be sued for damages resulting from a negligent act of its agents on the theory that it was a taking of private property for public uses. We pointed out that such a suit was not cognizable under Section 2 of Article I of the Constitution because there must be an *intentional* taking of the property

■ This holding, which is contrary to the jurisprudence cited above, is not founded on a sound premise.[6] For the constitutional guarantee of adequate compensation to the owner vouchsafes payment of the price to which a willing seller and purchaser would agree in the case of a voluntary sale and this is exactly the measure of compensation—market value of the property and severance damages—to be applied in condemnation proceedings. And it makes no difference in determining the amount to be awarded that the property was appropriated and not formally expropriated. Albeit in appropriation cases the condemning authority does not obey the mandate of the law that the compensation be paid before the taking, the non-compliance of this condition precedent to the condemnation does not subject the appropriator to a penalty, for when the owner recovers just compensation, he recovers all the law gives him.

To hold otherwise would be to inflict punitive damages upon the condemnor which is not permissible under our civil law system.

■ But, apart from this, we do not agree that the Department committed a tortious act or that it was a bad faith trespasser. On the contrary, the fact that the temporary servitude on the west side of the highway was taken under authority of an order of court evidences good faith on the part of the Department and its desire to comply with the mandate of the law. The obvious reason for the Department's failure to appraise the value of the temporary servitude and deposit the market value and severance damages in the registry of the court, at the time the supplemental and amending petition of expropriation was filed, was because the Department, under this supplemental petition and order, was restoring to plaintiffs the temporary unused

for a public use. It is true that we stated in the opinion that the McGeehan and Booth cases had been correctly decided because, in those matters, there had been an intentional taking of dirt for public purposes. However, we did not say that we approved the damages awarded in those matters. Indeed, there was no reason for us to comment on the awards in the McGeehan and Booth cases as this was not within the scope of our inquiry and decision in the Angelle case. In fact, the measure of just compensation allowed in the Booth and McGeehan cases is not in accordance with the other jurisprudence of this Court. See State Through Dept. of Highways v. Hayward, 243 La. 1036, 150 So.2d 6 and cases there cited.

6. The Court of Appeal sought to bolster its opinion by deducing that Article 507 of the Civil Code was applicable to the case. That Article provides, in substance, that, if the owner of the soil has made constructions or works thereon with materials which did not belong to him, he has the right to keep the same " * * * on condition of reimbursing their value to the owner of them and paying damages * * *." This Article is without relevance to the State and its subdivisions. It is little more than a general statement of the law of quasi contract and has nothing to do with the measure of compensation payable for property taken or damaged under the power of eminent domain, whether by expropriation or appropriation.

servitude validly expropriated on the east side of the highway, for which just compensation had been paid. Manifestly, the Department needed, and sought to expropriate, only one servitude for borrow pit purposes and it is clear that the plaintiffs were aware of this fact. The record shows that the land on the west side was inferior in value to that on the east side so the $37,145 (or $36,000 as stated by the Court of Appeal) deposited by the Department for the unused borrow pit, which the plaintiffs had withdrawn from the registry of the court, was more than ample compensation for the servitude taken on the west side. In truth, the supplemental order of expropriation was invalid solely because of a legal error of a technical nature and, as a result of it, plaintiffs obtained a windfall of $37,145, or as least $36,000, for the unused borrow pit. We reiterate that plaintiffs exhibit no case under Article 2315 of our Civil Code, for that Article imposes liability for damages on those who inflict injury on others through a tortious act; no tort was committed here and plaintiffs suffered no damages cognizable under that codal article. Indeed, they have obtained a monetary gain as the result of the legal error of the Department's agents.

▬▬▬ Moreover, there is still another reason why plaintiffs' demand for damages for trespass cannot be sanctioned. The facts plainly show that plaintiffs, while promptly protesting the invalidity of the supplementary expropriation order took no legal steps whatever to have the Department restrained from entering the west borrow pit area and removing the dirt therefrom. Actually, plaintiffs delayed the filing of this suit for highly inflated damages until two days after the contractor had removed from the borrow pit all the dirt necessary for the highway. Thus, it seems evident that plaintiffs were more interested in collecting damages for the alleged bad faith trespass and occupancy of their property than having the unlawful acts abated. Injunction was the available remedy and, as alleged injured parties, plaintiffs had the legal obligation to pursue the means within their power to minimize their damages. Their failure to act brings the case within the orbit of the equitable principle, long established in matters involving private corporations invested with powers of condemnation, that an owner of land who is aware that his property is being appropriated for a public use and stands aside taking no action to prevent the appropriation, cannot thereafter treat the appropriation as tortious. For in such cases he must be held to have impliedly consented to the appropriation and therefore recovery is restricted to just compensation for the property taken. See St. Julien v. Morgan's Louisiana & T. R. R. & S. S. Co., 35 La. Ann. 924 and 39 La.Ann. 1063, 3 So. 280; Mitchell v. New Orleans and N. E. R. R. Co., 41 La.Ann. 363, 6 So. 522; Payne v.

Morgan's Louisiana & T. R. R. & S. S. Co., 43 La.Ann. 981, 10 So. 10; McCutchen v. Texas & P. Ry. Co., 118 La. 436, 43 So. 42; Taylor v. New Orleans Terminal Co., 126 La. 420, 52 So. 562, 139 Am.St.Rep. 537; Moore Planting Co. v. Morgan's Louisiana & T. R. R. & S. S. Co., 126 La. 840, 53 So. 22; Webster Sand, Gravel & Construction Co. v. Vicksburg S. & P. Ry. Co., 129 La. 1096, 57 So. 529; Pons v. Yazoo & M. V. R. Co., 131 La. 313, 59 So. 721; Louisiana Land Co. v. Blakewood, 131 La. 539, 59 So. 984; Roussel v. New Orleans Ry. & L. Co., 152 La. 517, 93 So. 758; Gumbel v. New Orleans Terminal Co., 186 La. 882, 173 So. 518, 190 La. 904, 183 So. 212 and 197 La. 439, 1 So.2d 686; A. K. Roy, Inc. v. Board of Com'rs for Pontchartrain L. D., 238 La. 926, 117 So.2d 60 and Veillon v. Columbia Gulf Transmission Company, La. (La.App.) 192 So.2d 646, cert. den. 250 La. 256, 195 So.2d 143.[7]

■ We conclude that the district judge was correct in limiting the measure of re-covery, including severance damages, to $33,625.

Under its reconventional demand, the Department seeks a credit against any recovery by plaintiff landowners for the amount paid them for the original unused borrow pit on the east side of the highway which was restored to plaintiffs by the supplemental expropriation order. The Department is contending that the plaintiffs have been unjustly enriched by the payment for this servitude since it was never used.

■ We find, as did the Court of Appeal, that, although the Department did not use this servitude, it nevertheless had the right to use it and, hence, recovery cannot be had of the amount paid for the temporary servitude itself. On the other hand, there can be no doubt that the Department is entitled to recovery of the amount paid for severance damages for the unused servitude as plaintiffs have not suffered any such damages at all. A majority of the Court of Appeal properly recognized this credit and allowed $8360 [8] as the estimated

---

7. Most of the above cited cases involved petitory actions brought by owners of property against railroad companies which had taken possession of their lands for railroad purposes. The rationale of these decisions is that an action for recovery of the land will not lie when the owner has permitted the appropriator to remain in possession of the property for, in such instances, he must be held to have acquiesced in the taking and that, while the appropriator does not acquire title to the land, it is to be recognized as having a right of servitude thereon and cannot be ousted from possession.

8. The Department complains that this figure is erroneous and that the severance damages awarded for the temporary unused servitude were $10,481. According to the record, Hines, one of the Department's appraisers, testified that the severance damages were $10,481. However, its other appraiser, White, stated that the severance damages were $8360. In view of the variance in the

severance damages " * * * which was included within the total $36,000 deposited for the original borrow pit servitude * * *". This part of the judgment is, therefore, affirmed.

For the reasons assigned, the judgment of the Court of Appeal is amended by reducing the principal amount thereof to $33,625, subject to a credit of $8360, or a balance due plaintiffs by the State, Through the Department of Highways, of $25,265 with legal interest thereon from June 15, 1962 until paid, and all costs of these proceedings. As thus amended, the judgment of the Court of Appeal is affirmed.

SUMMERS, Justice (dissenting).

My principal objection to the majority opinion centers upon the holding that the action of the Department of Highways is an "appropriation", and, because of this, the award to the landowner is to be determined by the same principles which would apply if an "expropriation" were involved.

In my view, the power of the state to take private property for public purposes without the consent of the owner reposes in the Legislature. La.Const. art. 3 § 1, et seq. (1921); Stovall v. City of Monroe, 199 La. 195, 5 So.2d 547 (1942); Bozant v. Campbell, 9 Rob. 411 (1845). This right is circumscribed by Article I, Section 2, of the State Constitution, which provides that "No

person shall be deprived of * * * property, except by due process of law," and "Except as otherwise provided in this Constitution, private property shall not be taken or damaged except for public purposes and after just and adequate compensation is paid." Almost every constitution in our state's history has embodied this guarantee.

An exception which modified the due process requirement, which is pertinent here, was created by constitutional amendment in 1948. The exception, contained in Article VI, Section 19.1, confers power upon the Legislature to authorize the taking of property for highway purposes by orders rendered ex parte in expropriation suits prior to judgment and upon the deposit of an amount estimated as fair compensation. In 1954 to implement this exception, and to delegate to the Department the authority to utilize this exceptional method of expropriation, the Legislature enacted Sections 441 through 460 of Title 48 of the Revised Statutes, providing for expropriation by the Department by a "Declaration of Taking", commonly called "quick taking".

Only a bare majority of this court, I might add parenthetically, reads these provisions of the Revised Statutes to permit the quick taking of borrow pits. Three members of the court do not, being of the opinion that only highway rights of way proper can be expropriated in this manner. See State

testimony of the Department's experts, we cannot say that the Court of Appeal

was incorrect in allowing the smaller figure.

Through Dept. of Highways v. Bradford, 242 La. 1095, 141 So.2d 378 (1962).

Assuming the correctness of the Bradford decision, however, since it has no bearing on the issue before the Court, the right to expropriate borrow pits is additionally authorized under the general expropriation laws (La.R.S. 48:222; La.R.S. 19:1 through 19:14; La.Civil Code art. 2626 through 2641). Under these laws, unlike the quick taking statute, title and possession to the property cannot pass until there is a finding by the court that a public necessity exists for the taking and the amount of compensation to be awarded for the taking is fixed by judgment of court and paid. Obviously, because of these requirements which are considered essential to satisfy the requirements of Article I, Section 2 of the Constitution, general expropriation laws involve numerous delays. For this reason the Department rarely proceeds under this authorization but elects instead to proceed under the exception authorized by Article VI, Section 19.1 of the constitution and contained in the quick taking statute.

I am unaware of any other instance in which the Legislature has surrendered or delegated its right to expropriate which would apply to the facts of this case. No such enactment appears in the majority opinion, and, surely, the Department claims no independent authority to expropriate. It may do so only for the purposes and in the manner authorized by the Legislature.

Expropriation under the quick taking statute and under the general laws of expropriation, then, are the processes ordained by the Legislature for the taking of property without the owner's consent which are pertinent to this case. They constitute the due process requirements which must be fulfilled under the constitution before private property can be taken without the owner's consent. Courts of law may not, therefore, usurp legislative prerogatives and devise other methods to accommodate the law to untenable positions in which administrative agencies have placed themselves. Especially is this true when the accommodation involves disregard of the constitution.

It is conceded here that the quick taking statute was not complied with by the Department. There is, in fact, a final adjudication to this effect which this court approved. State Through Dept. of Highways v. Bordages, 156 So.2d 617 (La.App.1963), writs denied 245 La. 462, 158 So.2d 612 (1963) "The judgment complained of is correct."

Because the Department sought to avail itself of the quick taking method of expropriation to acquire this property, no attempt was made to comply with the general expropriation laws. Not having complied with the quick taking method and no effort having been made to proceed under the general expropriation laws, the Department has not conformed with either of the two

approved methods for expropriating. The consequence is that there has been no legally acceptable taking in keeping with the due process requirements of the law.

It is a universal rule of law that a grant of the power of expropriation is one of the attributes of sovereignty most fraught with the possibility of abuse and injustice. The right, therefore, never passes by implication. To the contrary, when the power is granted, the extent to which it may be exercised is limited to the express terms or clear implication of the statute in which the grant is contained. That is to say, statutes conferring the power must be strictly construed. Clear legislative authority must be shown to justify the taking. Authority cannot be implied or inferred from vague or doubtful language. When the matter is doubtful it must be resolved in favor of the property owner. Orleans-Kenner Electric Ry. Co. v. Metairie Ridge Nursery Co., 136 La. 968, 68 So. 93 (1915); 1 Nichols, The Law of Eminent Domain Sec. 3.213(1) (rev. 3rd ed. 1964); 18 Am.Jur., Eminent Domain, Sec. 26; 29A C.J.S. Eminent Domain § 22.

Not having followed the legislative authorization, the Department is without any authorization and the court cannot supply it. Under these circumstances, the Department is responsible for the damage inflicted upon the owner. Its actions constitute a trespass —a tort, nothing else, for which it must respond in damages just as an ordinary person would do. Angelle v. State, 212 La.

1069, 34 So.2d 321, 2 A.L.R.2d 666 (1948). See also United States v. Cress, 243 U.S. 316, 37 S.Ct. 380, 61 L.Ed. 746 (1917). The measure of those damages, under well-settled rules of law, is the value of the dirt illegally removed or the cost of restoring the property to its prior condition, together with compensation for any other damages incurred by virtue of the trespass. In short, the owner must be made whole again. Nothing else is acceptable under Article 2315 of the Civil Code which is the basis of this suit. Angelle v. State, supra; Booth v. La. Hwy. Comm., 171 La. 1096, 133 So. 169 (1931) and McGeehan v. Board of Levee Com'rs., 165 La. 241, 115 So. 473 (1928). No other result gives effect to the plain language of the constitutional provision (La.Const. art. 1 § 2 (1921)) designed for the protection of the property owner.

By amassing diverse and inappropriate doctrines, theories and principles the majority has arrived at the identical result which would be reached if the Department had complied with the expropriation laws in every respect. The opinion, in effect, supplies another method of depriving persons of private property without their consent. What is dangerous about this is that the new method has no regard for the specific requirements of the constitution or legislative enactments on the subject. Such a course of judicial lawmaking is unwise and without constitutional sanction.

I respectfully dissent.