HOOD, Judge.
This suit was instituted by seven persons, all of whom are brothers and sisters, who claim that they are the owners of a tract of land in Acadia Parish on which defendant, South Central Bell Telephone Company, installed an underground telephone cable. Plaintiffs allege that the cable was installed without their permission. They seek a judgment ordering defendant to remove the cable and condemning it to pay damages and attorney’s fees primarily for wrongful trespass.
The defendant answered, alleging that the cable lies wholly within the right-of-way of a highway abutting plaintiffs’ property, that a permit to locate the line there was obtained from the Louisiana Department of Highways, and that plaintiffs’ demands thus should be rejected. Defendant also reconvened, alleging that the cable was laid with plaintiffs’ full knowledge and consent, and that if the court finds that it did not have the right to construct the cable where it is presently located, defendant nevertheless is entitled to judgment permitting the cable to remain where it is now situated upon paying plaintiffs reasonable compensation. It prays that defendant be recognized as the owner of a servitude for the maintenance of the cable upon payment to plaintiffs of the sum of $111.38, which amount was deposited in the registry of the court by defendant.
The trial court rendered judgment in favor of plaintiffs, condemning defendant to pay to each plaintiff damages in the sum of $250.00, making a total award of $1,750.00. The judgment did not order the removal of the underground cable. Defendant appealed.
The principal issue presented, and we think the determining one, is whether plaintiffs acquiesced in the construction of the underground telephone cable. We have concluded that they did, that they thus are barred from recovering trespass damages, and that they are relegated solely to a claim for compensation for the value of the rights taken and for severance damages.
Prior to 1954, plaintiffs, together with two other persons who are not parties to this suit, owned in indivisión a 2.641 acre tract of land in Acadia Parish. That tract was bounded on the south by U.S. Highway 90, with a frontage of 179.3 feet on that highway.
In September, 1954, the above 2.641 acre tract of land was subdivided into nine separate lots, each of which has a frontage of about 20 feet on Highway 90. The nine owners of the original tract entered into a partition agreement on October 25, 1954, under the terms of which each acquired full ownership of one of those lots, and he released his or her interest in and to all of the other lots. Each lot was described in that partition agreement, and in the plat of the subdivision of the original 2.641 acre tract, as being bounded on the south by the north line of the right-of-way of U.S. Highway 90. Each of the seven plaintiffs in this suit acquired one of those narrow lots.
*489 During the latter part of the year 1973, defendant began constructing an underground telephone cable along the north side of Highway 90 in that area. Prior to beginning that construction work it obtained a permit from the Louisiana Department of Highways, issued on October 12, 1973, authorizing it to use and to occupy the right-of-way of U.S. Highway 90 in that part of Acadia Parish for the installation, operation and maintenance of that particular underground cable.
Although the telephone company had a permit to install the cable on the highway right-of-way, officials of the company explained that they preferred, when possible, to install it on private property near and parallel to the highway, rather than on the highway right-of-way itself, because when located in the highway right-of-way the cable was sometimes damaged when highways were repaired or altered.
In an effort to lay as much of the cable as possible on private property, the telephone company obtained permission from a number of property owners along that route to install the cable within their fence lines, on their private property and off the highway right-of-way. Some landowners refused to grant the requested right-of-way, however, and when that occurred the telephone company simply changed the route of the cable slightly and constructed it outside the fence line of the property owner, laying it wholly within the highway right-of-way.
In 1973 Nugie Roy, the owner of one of the above lots fronting on Highway 90, executed a right-of-way deed granting permission to defendant to construct the buried cable across his property. Nugie Roy is not a party to this suit.
During the latter part of 1973, and before any construction work began in that immediate area, Charles W. Duhon, a right-of-way agent for defendant, contacted Mrs. Ida Roy Hoffpauir, the owner of another lot in that subdivision and one of the plaintiffs in this suit, requesting that she also execute a right-of-way deed. Mrs. Hoffpauir refused to execute such a deed or to grant permission for defendant to lay the cable on her property. The right-of-way agent reported that fact to the telephone company, and the latter thereupon decided that it would be useless to contact any of the other owners of lots in that subdivision, because it was more practical for the cable to be installed wholly within the boundaries of the highway right-of-way along the entire 179.3 foot frontage of the above subdivision, rather than to construct it partly on private property and partly on the right-of-way over that relatively short distance. The telephone company thereafter made no effort to obtain right-of-way deeds from the other plaintiffs before construction was begun.
On December 12, 1973, the cable was constructed a distance of 179.3 feet across the entire front of the original 2.641 acre tract of land. It was installed wholly within the highway right-of-way, no part of the cable having been laid north of the south fence line of plaintiffs’ property. A trench about one foot wide and two or three feet deep was dug parallel to, and from three to five feet south of, the north boundary of that right-of-way. A trenching machine was used for that purpose, the cable was laid right behind that machine, and the trench was then refilled. Only one day was required to install the cable along that 179.3 foot stretch. No above ground structures were installed by the telephone company in that area, and at the time of the trial it was impossible to determine from a visual inspection that a cable had been installed there. The company permits driveways or buildings to be constructed over the cable.
No one protested or questioned the right of defendant to install the cable at that location before or at the time it was constructed. Two or three months later, however, Sidney Istre, the husband of one of *490 the plaintiffs, concluded from an examination of the Conveyance Records of Acadia Parish that the Highway Department owned only a servitude for highway purposes affecting the land on which the cable was laid, and that plaintiffs were undivided owners of the fee title to that property, subject to the highway right-of-way. Mr. Istre was serving as Chief Deputy Clerk of Court in Acadia Parish at that time, and he made the above discovery in February or March, 1974, while assisting defendant’s right-of-way agent in checking the title to some other property in that area. He informed plaintiffs of his conclusion, and after discussing the matter with them, plaintiffs authorized Mr. Istre to make a demand in their behalf on defendant for damages because of what they believed to be a wrongful trespass. An oral demand was made on defendant for damages one or two weeks after the above discovery was made. That demand was made in March or early April, 1974. Defendant refused to comply with that demand, and this suit was filed about six months later, on October 18, 1974.
As already noted, plaintiffs demand in this suit that defendant be ordered to remove the cable and that it be condemned to pay damages and attorney’s fees primarily for the alleged trespass. Plaintiffs contend that they did not expressly consent to or silently acquiesce in the construction of the above cable. They argue that defendant was in bad faith, and thus is liable for trespass damages, since it constructed the cable on the highway right-of-way without checking the records to determine the ownership of the property on which the cable was installed, and without contacting any of the plaintiffs other than Mrs. Hoffpauir prior to the time construction work was begun.
Defendant contends that plaintiffs acquiesced in the construction of the cable, and that accordingly under the “St. Julien Rule” they are barred from recovering trespass damages, and are restricted to a claim for compensation for the value of the land taken and for severance damages.
The “St. Julien Rule” is a doctrine which derives its name from the leading case of St. Julien v. Morgan Louisiana & Texas Railroad Co., 35 La.Ann. 924 (1883), where it was held that the unopposed appropriation of land for public use is regarded as creating a servitude, limited to the nature and extent of use conferred by such occupancy, with the result that the landowner is not entitled to trespass damages, but is restricted to the same measure of recovery as if the servitude had been lawfully expropriated, that is, the landowner is limited to a claim for compensation for the value of the land taken and for severance damages. See also Veillon v. Columbia Gulf Transmission Company, 192 So.2d 646 (La.App. 3 Cir. 1966); Gumbel v. Neva Orleans Terminal Co., 186 La. 882, 173 So. 518 (1937); A. K. Roy, Inc. v. Board of Commissioners for Pontchartrain Levee District, 238 La. 926, 117 So.2d 60 (1960); Gray v. State of Louisiana, Through the Department of Highways et al., 250 La. 1045, 202 So.2d 24 (1967).
In Gray v. State, Department of Highways, supra, our Supreme Court said:
“Their failure to act brings the case within the orbit of the equitable principle, long established in matters involving private corporations invested with powers of condemnation, that an owner of land who is aware that his property is being appropriated for a public use and stands aside taking no action to prevent the appropriation, cannot thereafter treat the appropriation as tortious. For in such cases he must be held to have impliedly consented to the appropriation and therefore recovery is restricted to just compensation for the property taken.”
In Veillon v. Columbia Gulf Transmission Company, supra, the landowner did not oppose the appropriation until a few weeks after the gas line was laid on his *491 property, because of his mistaken belief, until he consulted a lawyer after the taking, that the defendant had the legal right to lay that pipeline. We held that even though the landowner’s lack of opposition may have been due to an error of law or to an error of fact, the St. Julien doctrine nevertheless applied, and that the landowner was not entitled to trespass damages but was limited to an award only of the value of the servitude appropriated and severance damages. In that case we said:
“. . .a landowner waives his right to attack as legally unauthorized the use of his land appropriated for a public purpose by a party with power of eminent domain, when the landowner with full knowledge of the unauthorized taking expressly consents to it or silently acquiesces therein.
******
“Under this uniform jurisprudence, the unopposed appropriation for a public purpose is regarded as creating a servitude (limited to the nature and extent of use conferred by such mere occupancy, Consolidated Companies, Inc. v. Haas Land Co., 179 La. 19, 153 So. 6, Louisiana Power & Light Co. v. Dileo, La. App. 1 Cir., 79 So.2d 150, 159), with the landowner being relegated to the same measure of recovery as if the servitude had been lawfully appropriated. No trespass damages are recoverable, since for reasons of public policy the appropriation is regarded as not accomplished unlawfully but rather with the acquiescence of the landowner. . . .”
The St. Julien doctrine is founded on public policy and natural equity, to prevent one who by silence acquiesces in a taking for a public purpose from thereafter disrupting or making unduly burdensome the use for such a purpose.
There can be no acquiescence by the landowner, of course, unless he had knowledge of the taking. After reviewing the evidence in the instant suit, we have concluded that plaintiffs had knowledge of the appropriation involved here, and that they silently acquiesced in it.
LeRoy Joseph Roy, one of the plaintiffs in this suit, testified that he saw the trenching machine installing the underground cable on the highway right-of-way in front of his property, and that he did not protest or object in any way until three or four months subsequent to the time that construction was completed, after he and the other plaintiffs had “talked it over” with Sidney Istre. It is apparent that when he saw the cable being installed he believed that defendant had the legal right to install it on the highway right-of-way, and that he did not entertain any other belief until his brother-in-law, Sidney Istre, informed him of the conclusions he had reached. In view of the decision rendered in Veillon v. Columbia Gulf Transmission Company, supra, LeRoy Joseph Roy must be held to have acquiesced in the appropriation, even though his failure to protest may have been due to his erroneous assumption that defendant had the legal right to install the line on the highway right-of-way.
None of the other plaintiffs testified, either at the trial or by deposition. They thus have not denied that they had knowledge of the taking or that they acquiesced in it, except for a general denial contained in their answer to defendant’s reconven-tional demand. The record shows that all of the plaintiffs reside in Acadia Parish where the suit was filed and tried, and no explanation has been offered as to why they did not testify.
Mrs. Amelia Roy Fruge, one of the plaintiffs in this suit, lives with her brother, LeRoy Joseph Roy, in a home which is located near the place where the cable was installed in front of her lot. She drives along U. S. Highway 90 in that immediate area often. It is logical to assume that she saw the cable being installed on the highway right-of-way in front of her lot of *492 land, or that she at least saw the line being constructed along the highway as the construction crew approached her property from the east. It also is reasonable that she was informed of the project by her brother who lived in the same residence building with her and who testified that he saw the cable being laid.
Mrs. Ida Roy Hoffpauir, another plaintiff, obviously knew that defendant intended to install a cable at that location, because shortly prior to that construction defendant attempted to obtain her permission for it to be laid across her 20-foot-wide lot instead of on the highway right-of-way. We cannot reasonably conclude that she had no knowledge of the fact that the cable was being installed along the highway, partly on the right-of-way and partly on private property, for several miles leading up to the lot which she owned.
Sidney Istre, whose wife is a plaintiff, apparently knew that defendant planned to construct a cable along that route before it was installed, although he stated that he was not present when the cable actually was laid in front of plaintiffs’ property. He testified that he told Mr. Duhon, defendant’s right-of-way agent, that his family owned property along the route proposed for the cable “while he (Duhon) was checking the records in the office, before they laid the line,” and that that information was given to Duhon “before the cable was laid in December, 1973.” He also stated that in December, 1973, he and his wife “went out there, her mother’s house, and we saw where they had gone through.” We gather from his testimony that he knew ahead of time that the line was to be constructed along that route, that he went out to the property in December, 1973, to see what had been done on that project, and found at that time that the cable had already been installed on the highway right-of-way in front of his wife’s lot. We believe he kept his wife informed of the facts which were known to him relating to her property.
There is no direct evidence tending to show that the remaining three plaintiffs were aware of this construction project on the day the cable was installed in front of their property. All three of them lived in Acadia Parish, however, and four of their brothers and sisters knew that the cable was being installed at that location. All of the plaintiffs, including those not specifically named above, talked about the installation of this cable shortly after Sidney Istre concluded that they owned an interest in the highway right-of-way. These brothers and sisters thus communicated with each other, and we think it is more probable than not that they talked about the construction of this cable at the time Mrs. Hoffpauir was asked to sign a right-of-way deed and at the time the cable was actually installed in front of their property.
Defendant, in our view, has made at least a prima facie showing.that all of the plaintiffs had full knowledge of the fact that this telephone cable was being installed on the highway right-of-way in front of their property. The evidence is uncontra-dicted to the effect that they did not protest or object to the appropriation until several months later, after defendant had completed the installation of the cable a distance of several miles west of plaintiffs’ property. Plaintiffs thus acquiesced in that appropriation.
We think the burden of proof rested on the telephone company to show initially that plaintiffs had knowledge of and acquiesced in the appropriation. Defendant made a prima facie showing of knowledge and acquiescence on the part of plaintiffs, however, and the burden thus shifted to plaintiffs to offset that proof. Only one plaintiff testified and he admitted that he had knowledge of the installation and did not protest. The failure of the other plaintiffs to testify justifies a presumption that their testimony would be unfavorable to their cause. Plaintiffs thus have failed to offset the prima facie proof that they had knowledge of the appropriation and that they acquiesced in it.
*493 Our conclusion is that plaintiffs had full knowledge of the taking, and that they silently acquiesced in it. We hold that the St. Julien rule applies, that plaintiffs thus are barred from recovering trespass damages, and that they are limited solely to recovering the value of the rights taken and severance damages.
Although plaintiffs seek primarily to recover damages for an alleged wrongful trespass, we think the pleadings filed by them are broad enough to include a demand for the value of rights taken and severance damages.
The evidence establishes, without contradiction, that plaintiffs sustained no severance damages as a result of this taking. Defendant has judicially admitted that the servitude or rights appropriated by it had a value of $111.38 at the time of the taking. The judgment of the trial court must be amended, therefore, by reducing the award made to plaintiffs from $1,750.-00 to the sum of $111.38. We think defendant also is entitled to judgment on its reconventional demand, recognizing that it is the owner of a servitude for the installation and maintenance of a telephone cable at its present location on the highway right-of-way, running a distance of 179.3 feet in front of the above mentioned 2.641 acre subdivision. \
For the reasons assigned, the judgment appealed from is amended in the following respects: (1) The amount of the award made to plaintiffs is reduced from $1,750.-00 to the sum of $111.38; (2) judgment is hereby rendered in favor of South Central Bell Telephone Company and against plaintiffs, recognizing the telephone company as the owner of a servitude for the installation and maintenance of a telephone cable on the highway right-of-way where it is presently situated south of the above 2.641 acre subdivision; and (3) the Clerk of Court is ordered to pay to plaintiffs the sum of $111.38 which was deposited in the registry of the court by defendar:-'‘ In all other respects, and except as herein amended, the judgment appealed from is affirmed. The costs of this appeal are assessed to plaintiffs-appellees.
■ AMENDED AND AFFIRMED.