ELLIS, Judge.
Loto Louviere was the owner of Section 55, Township 8 South, Range 8 East, and Demest Louviere was the owner of Section 56, Township 8 South, Range 8 East, in Iberville Parish. These two sections lie parallel to each other, with Section 55 to the east of Section 56. Both sections are long and narrow in shape, and run in a northwesterly-southeasterly direction. The Sections are bordered on the south by Bayou Des Glaises, and are traversed towards their northern end by a Gulf States Utilities servitude which runs east and west.
On January 17,1967, Loto Louviere sold a strip of land 300 feet wide, containing 8.421 acres, to the Louisiana Department of Highways for the construction of Interstate Highway 10. This sale left a remainder of 72.464 acres south of 1-10 and 81.665 acres north of 1-10. The act of sale contained the following provisions:
“The Control of Access hereinbelow referred to is limited to the fascia of the structure and access beneath the structures across the lands hereby conveyed shall be permitted, limited only to the general regulations pertaining to streets, driveways, and drives as established by the Department of Highways of the State of Louisiana.

“The vendor acknowledges by these presents that the property hereinabove described is being acquired for the purpose of constructing a controlled access highway and that all direct access to and from the adjacent property will be limited to such access as may be provided to frontage roads, if any are constructed, and this provision shall be and remain binding upon the said Vendor, his heirs, successors and assigns forever.”
On July 24, 1967, Demest Louviere sold a strip of land containing 11.444 acres, irregular in shape, to the Louisiana Department of Highways. This parcel contained the land necessary for the interchange at the intersection of I — 10 and Louisiana Highway 975, also known as the Whiskey Bay Interchange, in addition to the land necessary for the construction of the 1-10. This sale left Demest Louviere with a remainder of 66.446 acres south of I — 10 and 87.025 acres north of 1-10. Although his act of sale did not permit access beneath the I — 10 structures, it is stipulated by the state that it should have contained a provision identical to that in the Loto Louviere act of sale, supra.
*1309 All of the land involved in both cases lies within the Morganza Floodway. In order to construct 1-10, which, in this area, is a 17-foot elevated causeway built on pilings, it was necessary to dredge a construction canal, 200 feet wide, down the middle of the 1-10 right-of-way. After its completion in 1970, this canal completely traversed the land sold by Loto Louviere to the State, and it was no longer physically possible to go from the north remainder to the south remainder thereof. The western end of this canal is located on the property sold by Demest Louviere to the State, but Demest Louviere still had access between his north and south remainders across that part of the parcel not traversed by the canal.
On March 22, 1972, Loto Louviere sold to Lavern J. Girouard and Bobby Ray Norman that portion of his remaining property lying south of the Gulf States Utilities servitude. This included the entire remainder south of I — 10 and the 19.536 acres lying between 1-10 and the Gulf States servitude. The purchasers were aware of the existence of the canal, but were of the opinion they were entitled to access from their property north of I — 10 to the south remainder by going around the western end of the canal on the property sold to the State by Demest Louviere. They bought the land for the express purpose of building a campground on the south remainder, and would not have bought it without access thereto. On January 15, 1974, Messrs. Girouard and Norman transferred the south remainder to Whiskey Bay Camp ’N Aire, Inc., in exchange for stock in the corporation. They remain the owners of all of the stock therein.
The State, meanwhile, decided to put in a boat launching ramp at the western end of the canal, with access thereto from the Whiskey Bay Interchange. In connection therewith, they extended a fence designed to control access into the Whiskey Bay Interchange to the western edge of the canal, thereby cutting off all access between the north and south remainders of the Demest Louviere property.
After the State denied the request of Messrs. Girouard and Norman for access to their south remainder by letter of June 14, 1974, the first of these consolidated suits was filed. In this suit, Messrs. Girouard and Norman, and Whiskey Bay Camp ’N Aire, Inc. sought a right of passage across the property of Demest Louviere to the Whiskey Bay Interchange, alleging it to be the shortest distance to a public road. De-mest Louviere brought the State into the case as a third party defendant, alleging the circumstances of the case, and the denial by the State of access between his two remainders. He prays for rescission of the sale by him to the State of the 11.444 acres on which 1-10 and the Whiskey Bay Interchange are presently situated, or alternatively, for unrestricted access across said tract and for damages arising out of the denial of access.
On October 8 and 11,1975, Demest Louvi-ere, Messrs. Girouard and Norman, and Whiskey Bay Camp ’N Aire, Inc. compromised their differences by agreeing to grant to each other full access across their respective properties to whatever access to or across the property of the State might be forthcoming as a result of these lawsuits, leaving only the third party demand of Demest Louviere against the State to be resolved.
During the pendency of the suit, Demest Louviere transferred his property to Mazel Louviere Decoux, Cynthia Louviere Gardner and Jessie Louviere, who were substituted for him as parties in this proceeding.
The second suit was originally brought by Whiskey Bay against the State, asking for a “right of passage from its enclosed property to the Whiskey Bay Interchange at the Westernmost property line of Demest Lou-viere property.” Subsequently, in an amended petition, Messrs. Girouard and Norman were joined as plaintiffs, and prayed for “a right of access from their enclosed property to the public road at the Whiskey Bay Interchange below the elevated highway”. They also prayed for damages arising out of the alleged breach of the obligation of the State to provide such access.
*1310 After trial on the merits, judgment was signed ordering the State to grant to Messrs. Girouard and Norman, Whiskey Bay and the assigns of Demest Louviere, access from their respective tracts of land “to the Public Road at the boat landing facility at the Whiskey Bay Interchange of Interstate 10, below the elevated structure.” All claims for damages were disallowed.
From the judgment, the State has appealed, asking that the judgment be reversed and set aside. Demest Louviere has answered the appeal, asking that the sale from him to the State be rescinded, and that he be granted damages and attorney fees. The other plaintiffs have also answered, praying that they be awarded damages and attorney fees.
It is the contention of Demest Lou-viere that the State is obligated to permit him unrestricted access across the 11.444 acres sold by him, as a result of the provision as stipulated to by the State. We note that no “general regulations pertaining to streets, driveways and drives” were produced by the State, although subpoenaed by the plaintiffs. We have no difficulty in concluding that the said provision had the effect of creating a conventional predial servitude of passage on the property purchased by the State from Demest Louviere beneath the highway structures, in favor of his north and south remainders. Of course, this servitude must be exercised within the limits of the appropriate codal provisions relating to predial servitudes. See Articles 709, 722, 753, 755, 756, 757, Civil Code. We find no merit in the contention of the State that a servitude personal to Demest Louvi-ere was created.
The main contention of the State is that by constructing the fence around the interchange and the boat launching ramp, it has “appropriated” Mr. Louviere’s right of access, and his only recourse is for compensation for the taking, citing St. Julien v. Morgan L. & T. R. Co., 35 La.Ann. 924 (1883) and 39 La.Ann. 1063, 3 So. 280 (1887); and Gray v. State, Department of Highways, 250 La. 1045, 202 So.2d 24 (1967).
We cannot agree with the State’s position. We are not presented with the type of situation envisioned by the St. Julien Doctrine which covers those cases in which a landowner, whose property has not been expropriated, knowingly permits major construction to take place on his property without taking action to prevent it. In this case, the State has admittedly breached its contractual obligation to Demest Louviere to permit access across the property sold by him subsequent to the acquisition of that property by the State. We therefore hold that the State must permit access by Mr. Demest Louviere across the property sold to the State by him for the construction of 1-10, in accordance with the law applicable to predial servitude.
We do not find that Mr. Demest Louviere is entitled to the rescission of the sale of the 11.444 acres to the State. We do not believe that the actions of the State in constructing the fence and thereby denying Mr. Louviere access are sufficient to constitute a failure of consideration.
Mr. Louviere proved no damages resulting from his denial of access. His claim for attorney’s fees is based on the provisions of R.S. 13:5111, which permits the award thereof when there is a suit for compensation for the taking of property. Mr. Louviere’s suit is specifically for breach of contract, and not for compensation for a taking of the servitude. He is, therefore, not entitled to attorney’s fees.
The situation is somewhat different with respect to Messrs. Girouard and Norman, and Whiskey Bay Camp ’N Aire, Inc. They have not prayed for access across the property sold to the State by Loto Louviere, to which they would be entitled for the same reasons given in the case of Demest Louviere. What they have asked for is a right of passage to the nearest public road, under the provisions of Articles 699 — 702 of the Civil Code. They seek this right across the lands conveyed to the State by Loto and Demest Louviere, along the north and south edge of the canal, below the superstructure. *1311 We find that these three plaintiffs are not entitled to the relief sought since they are separated from a public road by the property of Demest Louviere and others and not by the property of the State, and the State owes them no access except across the property sold to it by Loto Louviere.
As to damages, these plaintiffs are attempting to recover the purchase price of the property bought from Loto Louviere, the amount expended by them in connection with the development of the campground on the south remainder, and attorney’s fees.
There can be no doubt that plaintiffs have been delayed in the construction of their campground for several years because of the denial of access to their property by the State. They allege they have suffered damages as a result thereof as follows:
“a) Land Acquisition $11,800.00
b) Engineering — Surveys 1,500.00
c) Feasibility Study and Franchise for Camping Resort 7,500.00
d) Appraisal 1,500.00
e) Purchase of Bulldozer to clear and develop land 7,345.00
f) Legal fees and expenses 5.000.00
SUBTOTAL $34,645.00
g) Miscellaneous expenses including travelling, hauling, supplies, equipment in planning Camping Resort 10.000.00
TOTAL $44.645.00”
Of course, plaintiffs cannot recover the cost of acquiring the land while they still own the land. It would further appear that the other items of damages would be recoverable only if the State were to prevent permanently the construction of the campground. In our opinion, the measure of damages occasioned by the delay in the construction of the campground, or the prevention of the construction thereof, can only be determined when the judgment herein is final and plaintiffs’ right of access is fixed.
We, therefore, find that plaintiffs’ claim for damages is premature, and same is hereby denied, reserving to them the right to proceed by separate suit at such time as the damages are ascertainable.
The judgment herein is therefore amended to order the State to grant to Mazel Louviere Decoux, Cynthia Louviere Gardner, and Jessie Louviere access across the following described property sold by De-mest Louviere to the State of Louisiana:
“One (1) certain tract or parcel of land, together with all of the improvements thereon and all of the rights, ways, privileges, servitudes, and advantages thereunto belonging or in anywise appertaining, situated in the Parish of Iberville, State of Louisiana, and in Section 56, Township 8 South, Range 8 East, Southeastern Land District, identified as Parcel No. 20-1 on the property survey map for the Lenora-Ramah Interstate Highway, State Project No. 450-07-03, Federal Aid Project No. 1-10-3(44)130, Route 1-10, Iberville Parish, Louisiana, prepared by Barnard and Burk, and Howard, Needles, Tammen and Bergendoff, Consulting Engineers, dated April 29, 1966, said map being on file in the office of the Department of Highways in the City of Baton Rouge, Louisiana, the boundary lines of which tract are more particularly described as follows:
Parcel No. 20-1: Commence at the northwest corner of Vendor’s property, said corner being the northwest corner of Section 56, and proceed South 60°16'03" East along the section line between Section 56 and Section 57 and Vendor’s West boundary line a distance of 3571.90 feet to the true point of beginning; from said point of beginning proceed North 72°47'40" East traversing Vendor’s property a distance of 104.89 feet to a point and corner; thence South 64°58'33" East a distance of 438.92 feet to a point and corner; thence South 85°18'58" East a distance of 603.51 feet to a point and corner; thence North 72°47'40" East a distance of 778.01 feet to a point on the section line between Section 55 and Section 56 and Vendor’s East boundary line and corner; thence South 60°16'03" East along said section line and Vendor’s East boundary line a distance of 410.61 feet to a point and corner; thence *1312 South 72°47'40" West traversing Vendor’s property a distance of 1158.37 feet to a point and corner; thence South 57°35'32" West a distance of 102.11 feet to a point on the section line between Section 56 and Section 57 and Vendor’s West boundary line and corner; thence North 60°16'03" West along said section line and Vendor’s West boundary line a distance of 917.03 feet to the point of beginning and containing 11.444 acres.
“Bearings herein referred to are grid bearings based on Louisiana Coordinate System (South Zone).”
“Being a portion of the same property acquired by Vendor herein from Lot Lou-viere by Act of Sale dated November 13, 1964 of record in C.O.B. 165 page 582 and by Judgment of Possession dated April 18, 1958 of record in C.O.B. 144 of page 241 both of the records of Iberville Parish, Louisiana.”
The judgment is reversed insofar as it orders the State to grant access to the public road at the boat launching facility to Lavern J. Girouard, Bobby Ray Norman, and Whiskey Bay Camp ’N Aire, Inc., reserving to said parties the right to proceed against the State for whatever rights of access they may be entitled to, and for whatever damages might have arisen from the denial of such access by the State.
Costs of this appeal shall be paid one-third by Lavern J. Girouard, Bobby Ray Norman and Whiskey Bay Camp ’N Aire, Inc., and two-thirds by the State to the extent permitted by law.
AMENDED IN PART, REVERSED IN PART AND REMANDED.